## THE HARTWELL & RICHARDS CO. *vs.* JAMES MOSS.

PROVIDENCE—APRIL 12, 1901.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Continuing Guaranties.*

Guaranty as follows : "I hereby guarantee to be responsible for any account that may be due or to become due to X. from Z., and to see that such account is paid to the amount of $500":—

*Held,* the language being ambiguous, that it must be construed, under the rule adopted in this State, to be a continuing guaranty.

(2) *Discharge of Guarantor.*

*Held,* further, that, in view of the broad language used by the guarantor, in connection with the testimony in the case explanatory of the circumstances under which it was given, the act of the guarantee in taking the notes of the principal debtor and the subsequent renewal of them did not discharge the guarantor.

ASSUMPSIT on a guaranty. The facts are stated in the

opinion. Heard on petition of plaintiff for new trial, and new trial granted and judgment for plaintiff.

TILLINGHAST, J. There is considerable conflict in the authorities as to the rule to be applied in the construction of guaranties. One line of cases holds that in order to hold a guaranty to be a continuing one, it must *clearly* appear from the language used that such was the intention of the parties. Thus, in *Cremer* v. *Higginson*, 1 Mason, 323, Judge Story says that in any doubtful case the presumption ought to be against holding a guaranty to be continuing. In *Melville* v. *Hayden*, 3 B. & Ald. 593, Best, C. J., says: "It ought to appear unequivocally that it was the intention of the defendant to guarantee Moulden's payments for goods to be furnished from time to time;" and hence, in that case, the guaranty was held not to be continuing. *White* v. *Reed*, 15 Conn. 457, and *Whitney* v. *Groot*, 24 Wend. 82, are to the same effect.

Another line of cases holds that the language of the guaranty must be construed most strongly against the guarantor, and that if it is susceptible of two constructions, one of which would make it a continuing guaranty, that is the one which the court should adopt. To this effect are *Merle* v. *Wells*, 2 Camp. 413; *Mason* v. *Pritchard*, 12 East. 227; *Belloni* v. *Freeborn*, 63 N. Y. 383.

(1) The previous decisions of this court have expressly recognized and adopted this rule. In *Bailey* v. *Larchar*, 5 R. I. 534, Ames, C. J., stated the law as follows: "Whatever may have formerly been the rule in construing ambiguous phrases in guaranties, it is perfectly well-settled at the present day that if the guarantor, by the use of ambiguous language in his guaranty, renders it susceptible of two or more equally reasonable interpretations, that is to be adopted which makes most strongly against him. This is a just and sensible rule of construction in application to written contracts in general; and we see nothing in the position of a guarantor upon whose assurance, reasonably interpreted, another has acted, which should exempt him from it."

In *Deblois* v. *Earle*, 7 R. I. 29, the same eminent judge said : "The cardinal rule in the interpretation of all instruments, guaranties included, is to read the writing, and, taking its language in connection with the relative position and general purpose of the parties, to gather from it, if you can, their intent in the questionable particular. If, thus considered, its language is equally susceptible of either of two reasonable interpretations, that is to be adopted which makes most strongly against the maker of the instrument, or party using the ambiguous words ; and this rule in application to guaranties is quite compatible with another that no one can claim under a guaranty who does not bring himself fairly within the terms of it."

The language of the guaranty in the case before us was as follows : "I hereby guarantee to be responsible for any account that may be due, or to become due to The Hartwell & Richards Co. from John Hadfield, and to see that such account is paid, to the amount of 500 dollars."

This language is ambiguous in the particular above mentioned. It might be construed as a continuing guaranty to pay said amount regardless of the fact that the entire indebtedness might exceed the sum named, or it might be construed as being limited to an amount of indebtedness, contracted in the usual course of business, up to but not in excess of that sum. And, the language used being capable of the former construction, it must be held, under the rule adopted by this court in the cases referred to, to be a continuing guaranty. It was, therefore, a binding obligation upon the defendant until revoked by him, or until the doing of some act on the part of the plaintiff which should have the legal effect of discharging him therefrom.

The only question which arises under the evidence submitted, therefore, is whether the act of plaintiff in taking the notes of the principal debtor and the subsequent renewal thereof, thereby extending the time of payment beyond that originally given when the goods were sold, had the effect of discharging the guarantor. In view of the broad language used by the guarantor, taken in connection with the testi-

mony in the case, we think this question must be answered in the negative.    No particular account of $500 was guaranteed thereby, but *"any account that may be due or to become due."*    That is : The defendant said to the plaintiff, in effect, "I agree to be responsible for any sum which John Hadfield now owes you or which he may at any time hereafter owe you, up to the amount of $500."    It appears from the evidence that at the time the guaranty was given, Hadfield was indebted to the plaintiff in the sum of $160.75 on open account, and that he was also indebted to it on one note in the sum of $507.14, which was due on the 19th of September, 1895, and also on another note for $167.29, due October 22, 1895.    So that the defendant knew or might have known the state of the account at that time, and also the method in which the business between the plaintiff and Hadfield was being conducted.    It also appears in evidence that this method was continued after the guaranty the same as before, the plaintiff taking notes from time to time, as accounts fell due, down to nearly the time of the failure of Hadfield.    In the notice of revocation which defendant sent to the plaintiff, he makes no claim that he is not liable on the ground that notes were given by Hadfield, but simply on the ground that the credit given him exceeded $500.    The notice is as follows :

"PAWTUCKET, R. I., August 31st, 1896.

"*To the Hartwell, Richards Co.:*

"Take notice that I am no longer responsible for any account or portion of any account which John Hadfield of Lincoln has run at your house for goods, wares, and merchandise, hereby intending to and do revoke a certain paper signed by me to be responsible for the account of said Hadfield up to the sum of $500, for the reason that you have not kept your agreement with me, inasmuch as you have allowed said Hadfield credit up to the amount of $1,800, whereas your agreement with me was not to allow him credit to the amount of over $500.

"JAMES MOSS."

Although the defendant states in this notice that the plaintiff agreed not to give credit to Hadfield to an amount over $500, yet in his testimony he says that at the time the guaranty was given nothing was said except that Hadfield introduced him as the man who had come down from Lonsdale to be a bondsman for him, and, after some casual remark about the weather, defendant says : "Mr. Potter went to the desk and brought this guaranty and I signed it." In answer to the question "Was there any other talk at that time in relation to it?" the defendant answered, "No." "Q. Did you want Mr. Hadfield to be called on immediately to pay the whole $500 after you had signed for him? A. No. Q. What was said about that? A. Nothing said about it at the time at all. Q. Did you expect him to be called on to pay that $500 immediately? A. No. Q. You signed so as to help him to get credit and continue along in business? A. I thought he would keep paying the old debt and keep going along. Q. You supposed when you signed it that he would be given credit and kept along by them, did you not? A. Yes ; pay the old bills first and keep going along then. I didn't know that it stopped the account."

(2)  We think it is evident from this testimony that the defendant knew substantially, at any rate, the state of the account between plaintiff and Hadfield when he signed the guaranty, and that it was well-understood that the $500 and upwards of indebtedness which then existed was not to be the limit of credit to be given Hadfield.  On the contrary, it was evidently understood that further credit was to be given, and that the amount then owing was to be paid by Hadfield as soon as he might be able.  It appears, however, that no part of the amount then owing was ever paid either by Hadfield or by the defendant ; and hence we fail to see any sufficient reason why the latter should not be held on his guaranty. Of course we recognize the well-settled rule which is laid down in *Chace* v. *Brooks*, 5 Cush. 49, and in the other authorities cited by defendant's counsel, to the effect that the extension of time for payment beyond that originally fixed between the creditor and his debtor will ordinarily discharge the guar-

antor. But here we think the language of the guaranty, taken in connection with the testimony explanatory of the circumstances under which it was given, is broad enough to include any indebtedness from Hadfield to the plaintiff up to $500, and hence the cases relied on by defendant's counsel are not applicable.

While, therefore, we accept the facts as found by the single justice before whom the case was tried, we are of the opinion that he was in error in deciding that the guaranty was not a continuing one, and hence we reverse his decision and give judgment for the plaintiff for $500 and costs.

*Dexter B. Potter*, for plaintiff.

*Edward D. Bassett*, for defendant.