[No. 8411.]

## THE GLOBE EXPRESS COMPANY V. TAYLOR.

1. PAYMENT—*By Note, Check, or Draft,* is conditional only, and does not discharge the liability for which the paper is given, unless there is an agreement expressed or implied that it is accepted as absolute payment. (439, 440.)

The burden of proving such agreement is upon the one asserting it. (440.)

L., the agent of an express company, held certain freight for the defendant, to be delivered upon payment of the purchase price due the shipper. Defendant arranged with A. to discharge this amount, and by the procurement of A., L. was induced to accept a draft drawn by a bank with which A. was connected, upon another bank, and upon receiving this draft he

delivered the freight to defendant. There was no agreement or intention upon the part of L. to accept the draft as absolute payment. The draft was dishonored, and the express company having paid the shipper the amount due him were held entitled to recover it from defendant. (439, 440.)

2. APPEAL AND ERROR.—*Judgment.* All the facts of the transaction appearing in the record, an erroneous judgment was reversed and judgment for plaintiff ordered. (441.)

*Error to Mesa County Court.* Hon. WALTER S. SULLIVAN, Judge.

Mr. E. N. CLARK, Mr. J. A. MARSH and Mr. GEO. A. LUXFORD, for plaintiff in error.

Messrs. GRIFFITH, WATSON, & SMITH, for defendant in error.

Mr. Justice GARRIGUES delivered the opinion of the court.

In November, 1913, Andrew J. Taylor, defendant in error, ordered from the O'Fallon Supply Company, at Denver, a pump, which the company shipped by freight C. O. D. over the D. & R. G. R. R. to Whitewater, a station near Grand Junction, and prepaid the freight charges. At the same time the shipper drew a sight draft on Taylor for the purchase price plus the freight, which it attached to the invoice and bill of lading. These were sent through the Globe Express Company, plaintiff in error, to G. L. Linscott, its agent, who was also the station agent for the railroad company at Whitewater, with directions to deliver the bill of lading to Taylor, upon payment of the attached sight draft. Before the express company could deliver the bill of lading, and the railroad company the freight to Taylor, it was necessary that he should pay the amount of the draft. The express agent would then turn over to Taylor the bill of lading, and upon this being presented to the railroad company, it would deliver the freight to him. On Sunday the 23rd, Taylor and his wife were at Grand Junction, where

she phoned to Linscott about the shipment, and upon being informed that it had arrived, and of the amount necessary to be paid before it could be delivered, she asked whether he would accept her husband's personal check, and was informed that he could not accept personal checks in payment of freight, but wanted cash. The Taylors then remained in Grand Junction for the purpose of getting currency with which to pay the sight draft, and the next day, Monday the 24th, went to the Mesa County National Bank, of which Orson Adams was president, and where Taylor had some $6,000 on deposit. Taylor had commenced to write a check when Adams asked him what he was going to do with the money, and on being informed, remarked that it was not necessary to take the currency to Whitewater, saying: "You don't need to do that, I will fix it. You don't need to take the money out there." Adams then had a telephone conversation with J. Stewart, the local railroad agent at Grand Junction and requested him to arrange to have the freight **released** and delivered to Taylor, saying that if he would bring the bill of lading to the bank the amount to cover the charges would be paid. After this conversation Adams turned to Taylor and said: "All right, Andy, I will take your money and you can get the freight." Taylor thereupon wrote his personal check for the amount, payable to the Mesa County National Bank, and delivered it to Adams. Cotemporaneous with this transaction, and acting on this telephonic communication with Adams, the railroad agent at Grand Junction with whom Adams had been conversing over the phone, sent the following telegram to Linscott at Whitewater:

"If you have shipt. on hand for A. J. Taylor, please deliver and send bill to me for collection. Mesa County Bank will deliver B. L. to me for forwarding to you.

J. Stewart."

To which Linscott replied:

"To J. S.:   I have the bill of lading here for the A. J. Taylor shipment.   What I want is draft for $191.87 to take it up.     G. L. L."

The railroad agent then sent this wire:

"Agent Whitewater:   If you will deliver ship, A. J. Taylor, will send you draft to cover.     J. S."

In reply to which Linscott telegraphed:

"Will deliver the shipment for A. J. Taylor your wire date.   Please send me draft for $191.87 made out to R. F. Watkins, Actg. Treas., Globe Exp. Co.     G. L. L."

The latter message was received after business hours, and the next forenoon, Tuesday the 25th, the railroad agent at Grand Junction took the message to the bank and presented it to Mr. Adams who, with the message before him, drew the following bank draft and handed it to the agent:

"Mesa County National Bank.                    No. 84975.

      Grand Junction, Nov. 25, 1913.

M. C. N. B.

Pay to the order of R. F. Watkins, Treas., $191.87 One Hundred and ninety-one 87-100 Dollars

  Not over two hundred $200.

         Orson Adams, Prest.

To First National Bank, Denver, Colorado."

This was sent to Linscott, who received it on the 26th. The 27th was Thanksgiving day, and on the 28th the Mesa County National Bank failed to open its doors.   The draft went to protest and was never paid, and it is admitted there was no lack of diligence in its presentation.

On the 25th, Taylor and his wife drove to Whitewater, and Linscott on the strength of the telegram that a draft would be sent him, delivered the freight.   He learned on the morning of the 28th that the bank had failed, and immediately asked Taylor to return the goods or pay for the ship-

ment, which Taylor refused to do. After receiving the draft drawn by the Mesa County National Bank, Linscott on the strength of it purchased a money order from the Globe Express company at Whitewater to cover the amount due the shipper, sent it to the O'Fallon Supply Company, and forwarded the bank draft to the principal office of the express company at Denver. The Express Company having paid the shipper, demanded reimbursement from Taylor, which was refused. It thereupon brought suit against him in the justice court where the jury returned a verdict for the defendant. From this judgment an appeal was taken to the County Court where upon another trial the verdict was again for the defendant.

The County Court gave the following instructions:

### 1.

"This is an action brought by the Globe Express Company against the defendant, Andrew J. Taylor, to recover from defendant the sum of One Hundred Ninety-one Dollars and Eighty-seven cents due it, as it is claimed, for the delivery to the defendant of a certain bill of lading expressed to Whitewater through the plaintiff for the defendant, and which bill of lading, it is alleged, called for certain goods shipped to the defendant at Whitewater, and which was necessary to be obtained by the defendant before obtaining the goods."

### 2.

"If you find from the evidence that the defendant, Andrew J. Taylor, received the goods shipped to him at Whitewater, and that the bill of lading therefor was delivered up by The Globe Express Company to the railroad, for said goods, and that the said bill of lading was sent to Whitewater on condition that the sum of One Hundred Ninety-one Dollars and Eighty-seven cents should be paid for it to the Express Company before being turned over,

then you are instructed that the burden of proving payment is on the defendant and he must show that he made payment by preponderance of the evidence."

### 3.

"Payment to the Mesa County National Bank at Grand Junction, or the agent of the Denver & Rio Grande Railroad Company at Grand Junction, is not a payment to the agent of the Express Company at Whitewater, unless you find from the evidence that the plaintiff authorized such payment. Payment may be made to the agent at Whitewater either by money or draft, provided you find the agent called for a draft, but you are further instructed that the issuance of the draft cannot be construed as payment until it was received and approved by the agent of The Globe Express Company at Whitewater; and if you find from the evidence that it was not received at Whitewater until the 26th of November, 1913, and that within a reasonable time after its receipt, and while it was in possession of the agent it was refused, and Andrew J. Taylor was notified by the said agent at Whitewater, then you should find that the draft did not operate as a payment of the said claim."

### 4.

"If you find from the evidence that the defendant, Andrew J. Taylor, called at the Mesa County National Bank on Monday, November 24th, 1913, with the purpose of obtaining One Hundred Ninety-one Dollars and Eighty-seven cents for the purpose of taking it to Whitewater to pay for such cash shipment, and at Mr. Adams' request he turned the business over to him to arrange for the release of said shipment at Whitewater, without any instructions being given by him to Adams as to the method he should pursue in securing the release of said shipment, then as a matter of law you are instructed that the defendant gave Mr. Adams unlimited authority to adopt such legal mode

as he saw fit to secure the release of said shipment, and whatever Mr. Adams did in order to secure said release was the act of his principal, Mr. Taylor."

## 5.

"If you find from the evidence that G. L. Linscott, the agent of the Globe Express Company at Whitewater, on the 24th day of November, 1913, telegraphed J. Stewart at Grand Junction a message substantially as follows: "Will deliver the shipment for A. J. Taylor your wire date pls send me draft for $191.87 made out to R. F. Watkins, actg Treas Globe Express Co." and that Mr. Egger at Grand Junction presented the said message to the Mesa County National Bank on the following day and received a draft on the First National Bank of Denver for the sum of One Hundred Ninety-one Dollars and Eighty-seven cents, then you are further instructed that the said J. Stewart or Mr. Egger had no authority to bind the agent at Whitewater by taking said draft until the same was delivered to the agent at Whitewater and approved by him."

## 6.

"If you find from the evidence that Mr. Egger received a draft of the Mesa County National Bank at Grand Junction, you are further instructed that its receipt by him was not a receipt by the agent at Whitewater or The Globe Express Company until the draft was received at Whitewater and approved by the agent of The Globe Express Company at that station."

## 7.

"If you find from the evidence that the draft introduced in evidence in this case was issued by the Mesa County National Bank of Grand Junction at the instance of Mr. Taylor, or by Mr. Adams, acting as his agent, in favor of R. F. Watkins, treasurer of The Globe Express Company, then you are instructed that the payee had a reasonable time

within which to present said draft to the First National Bank of Denver for payment, and if the drawer, the Mesa County National Bank, failed and ceased to do business before the said payee had a reasonable time to present said draft to the First National Bank of Denver for payment, then you are instructed that the defendant is liable to the plaintiff on said draft."

8.

"If you find from the evidence that G. L. Linscott was the agent of The Globe Express Company at Whitewater, then you are further instructed that an agent has no authority to appoint a sub-agent to act for him in matters pertaining to the business of his agency, and that before he had authority to appoint any one at Grand Junction to act for him in matters pertaining to the business of his position at Whitewater, you must find from the evidence some lawful authority from his superior to make such appointment."

9.

"The court further instructs you as a matter of law, that Mr. Stewart or Mr. Egger could not act for the agent at Whitewater so as to perform any acts of discretion or pass judgment for him in matters pertaining to the business of The Globe Express Company at Whitewater without receiving authority from The Globe Express Company, acting through some officer superior to the local agent at the railway station at Whitewater or Grand Junction."

10.

"If you believe from the evidence that Mr. Egger acted simply as a messenger in obtaining a draft introduced in evidence, then he had no discretion in the matter of accepting or approving said draft when it was issued by the Mesa County National Bank, and you are further instructed that the draft was not binding on The Globe Express Company

as a payment of its claim until the said draft was turned over to the authorized agent at Whitewater for his inspection and approval."

## 11.

"The defendant claims that he paid for the C. O. D. charges of One Hundred Ninety-one Dollars and Eighty-seven cents in the hands of The Globe Express Co., at Whitewater, due on the bill of lading by leaving a check with the Mesa County National Bank at Grand Junction, payable to it or its order, but before such deposit can be construed as a payment of the claim due the express company at Whitewater, you must find that the agent of said company accepted said deposit as a payment and knew of such deposit being made for the benefit of plaintiff."

## 12.

"If you find from the evidence that Orson Adams, acting for the defendant, Andrew J. Taylor, caused a draft to be given by the Mesa County National Bank of Grand Junction, in payment of the claim of plaintiff, which draft through no fault of the plaintiff was not paid by the First National Bank of Denver, on which it is drawn, you will find the issues for the plaintiff."

## 13.

"The jury is instructed that if it believes from the evidence introduced in this case that the defendant, Andrew J. Taylor, on the 24th day of November, 1913, went into the Mesa County National Bank at Grand Junction, Colorado, and left with said bank money for the payment of the shipment sued on in this action, and with this money the draft of the Mesa County National Bank mentioned in this case was purchased by direction of the plaintiff's agent at Whitewater, Colorado, and that the defendant had nothing to do with the purchase of said draft, then you will return a verdict for the defendant."

Instruction 13 is instruction No. 1, prayed by the defendant, and instructions 1 to 12 inclusive were asked by plaintiff.

GARRIGUES, J., after stating the facts as above.

1. There is no conflict in the evidence and but one construction can be placed upon it, therefore Taylor's liability is a question of law. For this reason we have stated the evidence with unusual detail, and set out all the instructions. It was upon the strength of the message stating that Taylor would send him a bank draft in payment, that Linscott on the 25th released the freight. On the 26th Linscott received the draft, and the only question involved is whether it paid the obligation, the express company being without fault, and having paid the shipper. Linscott was the only person connected with the transaction having authority to represent the express company. The railroad and express companies were separate corporations, having no relation or connection except in business transactions. Stewart was the local railroad agent at Grand Junction, but not express agent, did not represent the express company, and had no authority over Linscott. Adams initiated for Taylor a plan of payment which would not require withdrawing currency immediately from the bank, and Taylor chose to let him handle the matter instead, of attending to it personally. Adams must therefore be regarded as the agent of Taylor in this transaction and whatever Taylor permitted Adams to do for him in furtherance of the payment was the act of Taylor. *Lester v. Snyder,* 12 Colo. App. 360, 55 Pac. 613; *Witcher v. Gibson,* 15 Colo. App. 163, 61 Pac. 192; *Stuart v. Asher,* 15 Colo. App. 403, 62 Pac. 1051; *Cheesman v. Nicholl,* 18 Colo. App. 174, 70 Pac. 797.

It is well established that a note, check, draft or bill of exchange given in payment, in the absence of an agreement and intention of the parties either express or implied that

the instrument will be accepted as absolute payment, is conditional only and does not discharge the debt, obligation or liability unless the instrument is paid, and the burden is upon the party alleging it, to prove such agreement and intention. *First National Bank v. Newton,* 10 Colo. 161, 14 Pac. 428; *Larsen v. Breene,* 12 Colo. 480, 21 Pac. 498; *Lomax v. Bank,* 46 Colo. 229, 104 Pac. 85; *Edwards v. Harvey,* 2 Colo. App. 109, 29 Pac. 1024; *Zook v. Odle,* 3 Colo. App. 87, 32 Pac. 82; *Brewing Co. v. Barets,* 9 Colo. App. 341, 48 Pac. 834; *People v. Rio Grande Co.,* 11 Colo. App. 124, 52 Pac. 748; *El Paso County v. Colo. Springs Co.,* 15 Colo. App. 274, 62 Pac. 336; *Leeper v. Schroeder,* 24 Colo. App. 164, 132 Pac. 701, 7 Cyc. 532, 1007; 22 Ency. Law (2nd Ed.)

Taylor gave the bank draft with the intention that it should pay his obligation, but it would only satisfy it in the event the draft was paid. The promise to send the draft procured the release of the freight, but the draft failed in accomplishing the primary purpose for which it was given, therefore the debt of Taylor remained unsatisfied, and the express company having paid the shipper, suit could be maintained by it on the original indebtedness, in the absence of an agreement and intention of the parties that the bank draft should be accepted as absolute payment.

Where it is agreed to trade, exchange or give the note of a third party for something, it constitutes absolute payment, because that is the agreement and intention of the parties. But in this case there was an indebtedness which Taylor had to pay before he was entitled to a release of the shipment, and he made this payment with a bank draft. The ultimate result intended to be accomplished was the delivery of the freight to Taylor, and the payment of his obligation to the supply company. The giving of the draft secured the release of the freight, but it did not liquidate the indebtedness because it was never paid, and in the absence of an intention and agreement, express or implied to take

it as absolute payment, the debt for which it was given remained unsatisfied. There is nothing which takes the case out of the ordinary rule governing payments by bank draft. Linscott wanted cash, would not accept a personal check, but took a bank draft, which naturally he would expect to be paid. There is no direct evidence and no legitimate implication can be indulged in that he assumed the risk of its payment. It is not to be presumed, under the circumstances, that he intended to accept the draft in absolute satisfaction of the amount due regardless of whether it should be paid or not. He was not acting for himself; he was but an agent in possession of the shipment which it was his duty to hold and which he had no authority to release until the sight draft was paid. From the position which he occupied there could be no purpose of his assuming such responsibility and the burden was upon Taylor to show either expressly or by implication that Linscott agreed or intended to accept a bank draft as absolute payment.

2. Instructions 1 to 12 given by the court, apparently state the law correctly as applied to the facts and if the jury had followed them, it must have returned a verdict for the plaintiff. Instruction 13 prayed by defendant, is in conflict with many of the prior instructions, is erroneous as applied to the facts and must have misled the jury.

All of the facts are established and it would be useless to reproduce them at another trial, as under the law as announced, there can be but one result. The case is therefore reversed and remanded with directions to the lower court to enter judgment for the plaintiff.

*Reversed and remanded with directions.*

Chief Justice GABBERT and Mr. Justice SCOTT concur.

Decided February 7, A. D. 1916. Rehearing denied July 3, A. D. 1916.