No. 19,132.

JOHN C. BURT AND GRACE G. BURT *v.* ROBERT L. CRAIG.

(360 P. [2d] 976)

Decided April 10, 1961.

Messrs. BRADLEY, CARNEY & JOHNSON, for plaintiffs in error.

Mr. RICHARD N. GRAHAM, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE McWILLIAMS.

THE parties are here in reverse order of their appearance in the trial court and will be referred to as they there appeared or by name.

On or about July 9, 1956, Craig and the Burts entered into a written contract whereby Craig purchased the John C. Burt Insurance Agency from the Burts for $24,000, with no down payment and monthly payments in the amount of $200.00. Simultaneously with the execution of this contract Craig signed a promissory note in favor of the Burts for $24,000, payable at the rate of $200.00 per month and secured by a chattel mortgage on the office furniture and fixtures of the business. The contract referred to provided, inter alia:

"8. It is further agreed between the parties that in the event the party of the second part [Craig] defaults in any of the payments called for under the terms of this agreement and the promissory note executed pursuant thereto, the party of the first part [the Burts] may give written notice to the party of the second part of said default, and if not corrected within ninety (90)

days, may declare this agreement void, cancelled and of no force and effect, *retaining all amounts paid under the terms of the agreement and the promissory note executed pursuant thereto as liquidated damages,* and the party of the second part shall and will in that event surrender, relinquish and transfer unto the party of the first part all of his interest in and to said John C. Burt Insurance Agency, the accounts, furniture, fixtures and equipment thereof and shall pay unto the parties of the first part any deficiency between the balance then owing on the principal under the terms of the agreement and the then value of the said John C. Burt Insurance Agency. *If value is determined to have been appreciated, party of the second part shall be paid said appreciation.* Upon payment of difference, if any, all parties shall be released from further obligations hereunder and note shall be cancelled. *For the purposes of this agreement, the value shall be computed as 1¾ times the average annual net commissions plus furniture, fixtures and equipment."* (Emphasis supplied.)

Pursuant to the contract Craig took over the ownership and operation of the insurance agency and thereafter made the regular monthly payments of $200.00 till February 1958. By that time serious differences had arisen between Craig and the Burts to the end that Craig intentionally defaulted on his February 1958 monthly payment. On February 24, 1958, the Burts sent written notice of default to Craig and advised him that under the terms of the contract he had 90 days to correct such default. Attempts to resolve the differences of the parties failed with the result that on July 1, 1958, the Burts took back the furniture, fixtures and accounts of the business and resumed ownership and operation of the agency. Some months later it was sold to another for $22,500.

Craig brought the present action seeking a declaratory judgment as to his rights and responsibilities under the agreement. By answer the Burts in effect joined in a

request that the rights and responsibilities of all parties be determined. Each also sought judgment for any monies found to be due and owing under the contract.

Trial was to the court without a jury upon the conclusion of which the court took the matter under advisement, counsel filing written briefs in lieu of oral arguments. Thereafter the court in detailed written findings allowed certain claims and denied others, the net result being a judgment in favor of Craig against the Burts for $163.08 and costs. Both the Burts and Craig claim error on the part of the trial court in determining the credits due each under the agreement.

The Burts contend that the trial court erred in the following particulars: (1) in its manner and method of determining the appreciated value of the agency; (2) in crediting Craig with a check in the amount of $2,195.05 from U. S. Fire Co. covering premiums earned in 1957 but not delivered till a date in 1958 when Craig was in default; (3) in refusing to credit Burts with a sum representing reasonable attorney's fees as provided in the note; (4) in refusing to credit Burts with an amount claimed as damages sustained by them by reason of Craig's continued solicitation after July 1, 1958, of accounts belonging to the agency; and (5) in *crediting Burts* with certain sums due agents of the Jefferson County School District Agents Association.

Craig urges as error the trial court's refusal to credit him with sums paid by him under the contract.

The main dispute stems from the fact that Craig makes claim for the appreciated value of the agency, i.e. the difference between the purchase price of $24,000 and its appreciated value as of the date it was surrendered to the Burts. More specifically, there is disagreement as to the manner of determining the value of the agency as of the time Burts resumed ownership and operation. Craig claims the point is expressly covered by the agreement which provided that "the value shall be computed as 1¾ times the average annual net commissions

plus furniture, fixtures and equipment." The Burts concede that under the agreement Craig is entitled to any appreciation in the value of the agency during the period of his ownership and operation, but contend that in applying the formula provided in the agreement, the phrase "average annual net commission" does not include commissions on so-called "target or public" business. It is claimed that "target or public" business as applied to the insurance business has a well-defined meaning within the trade and means insurance sold to government agencies or institutions, and to substantial private concerns, for example, Jefferson County School District, Colorado School of Mines, Adolph Coors Co. and the like. If Craig's method of computing the appreciated value of the agency be correct then the difference between the appreciated value and the purchase price of $24,000 is $5,209.99 greater than if computed according to the Burts' method, i.e. excluding from "average annual net commissions" the so-called "target or public" business.

Over objection the trial court permitted Burts to introduce evidence that "target or public" business was not customarily included in determining the value of an insurance agency. However, the trial court in its findings declined to consider such evidence and held that regardless of custom in the trade the contract between the parties was clear and unambiguous and not subject to parol testimony to vary or alter its terms. Specifically the trial court held that in determining the value of the agency as of the date it was surrendered to the Burts, the contract clearly provided the manner in which value should be computed, i.e. $1\frac{3}{4}$ times the average annual net commissions, plus office furniture, fixtures and equipment, and further held that "net commissions" embraces all commissions, including target and public. In holding that evidence of custom and usage was not admissible to vary the terms of this contract, the trial court was correct. If the Burts wanted "target

or public" business excluded from the average annual net commissions they could have easily inserted a provision to that effect in the contract. Not having done so, they are bound by the contract as written.

■ Proceeding to a consideration of the remaining assignments of error, we think the trial court was correct in holding that the check in the amount of $2,195.05 from U. S. Fire Co. covering premiums earned in 1957 should properly be credited to Craig, even though the check in question was not delivered until April 1958, a time when Craig was in default. The check represented premiums earned at a time when Craig owned and operated the agency, and was therefore a part of the net commissions earned pursuant to the contract.

■ ■ The trial court refused to award attorney's fees to the Burts. In this we think it was correct. The promissory note executed by Craig in connection with the chattel mortgage provided for the payment of attorney's fees in the event counsel was employed to enforce it. When Craig defaulted on his contract the Burts elected to forego action on the note and chose to proceed under the default and surrender terms of the contract to reenter and reassume ownership of the agency. The action being one for a declaratory judgment, based upon a contract, with which the note and mortgage are only remotely connected, no attorney's fees are recoverable. Similarly, the refusal of the trial court to award the Burts damages for Craig's alleged solicitation after July 1, 1958, of the accounts of the John C. Burt Insurance Agency was not erroneous. The evidence of solicitation and resulting damage was entirely too speculative and indefinite to permit an award.

■ Finally the Burts complain that the trial court erred in *crediting them* with certain monies due agents of the Jefferson County School District Agents Association which Craig had withheld and which Burts will have to account for. It would be more accurate to say that such funds are to be debited to Craig in the account-

ing. The result is the same however it may be stated, and in crediting the amount of such funds to the Burts the trial court did not err.

■ Craig assigns cross-error to the refusal of the trial court to credit him with all monies paid by him under the contract. An express provision of the contract authorized the Burts to retain all such amounts as liquidated damages. As was noted, supra, the Burts are bound by the contract as written, and, by the same token, Craig is similarly obligated to live up to the agreement. See *Perino v. Jarvis,* 135 Colo. 393, 312 P. (2d) 108.

Examination of the entire record persuades us that the trial court gave careful consideration to the various claims of the parties, and its findings in each instance are amply supported by competent evidence.

The judgment is affirmed.

MR. CHIEF JUSTICE HALL and MR. JUSTICE DOYLE concur.