**FORD MOTOR CREDIT COMPANY,**
Plaintiff,

v.

**BOB JONES ENTERPRISES, INC.,** Robert T. Jones and James B. Jurgens,
Defendants.

Civ. A. No. 8357.

United States District Court
D. Colorado.

April 20, 1965.

Grant, Shafroth, Toll & McHendrie, Frank H. Shafroth, Denver, Colo., for plaintiff.

Dayton Denious and William G. Sumners, Jr., Denver, Colo., for defendants Bob Jones Enterprises, Inc. and Robert T. Jones.

William F. Dwyer, Denver, Colo., for defendant James B. Jurgens.

DOYLE, District Judge.

The above action was tried to the Court on March 24 and 25, 1965, and was taken under advisement so as to give further attention to the questions of law which had been raised in connection with Counts II and III of the complaint. Briefs have been filed and the matter now stands submitted.

Skyland Motors, Inc., which is not named here, had a very large Ford dealership in Denver, Colorado. The defendant Bob Jones Enterprises was the owner of the stock of Skyland Motors; in turn, Robert T. Jones, or Bob Jones, controlled both corporations. In 1960, particularly the latter part of that year, the Jones companies experienced very serious financial difficulties requiring the extension of substantial credit by the plaintiff and by the Ford Motor Company, also the Central Bank and Trust Company of Denver. These difficulties became even more serious in the first months of 1961, and at last in March of that year the plaintiff, in conjunction with Ford Motor Company, foreclosed the chattel mortgages on virtually all the property of the debtors. Following this, Skyland Motors went into bankruptcy.

The present claims are an aftermath of this business failure and are salvaging efforts on the part of Ford Motor Credit Company. Various instruments were executed before and during the mentioned critical periods. These included personal guaranties by Jones and James B. Jurgens, Vice President of the Enterprises corporation. The claims are based upon these instruments.

Count I is a promissory note in the amount of $60,000.00 which was executed by Skyland Motors and was guaranteed by Bob Jones Enterprises and by Jones personally. There is an accompanying agreement which declares the conditions and considerations. It is alleged that only a small part of the amount of this loan was paid and judgment is sought in the amount of $56,666.00 together with interest from October 10, 1960, the date of the execution of the note. Attorneys' fees in the amount of $8500.00, being fifteen per cent. of the outstanding balance, as provided by the loan agreement, are also demanded.

Count II is based upon a guaranty which was given to the Central Bank and Trust Company of Denver (and later assigned by the bank to Ford Motor Credit Company). This is signed by Robert T. Jones and by James B. Jurgens, individually. It was executed on January 6, 1961, to cover a bank overdraft. Judgment is sought against these two individual defendants in the total amount of the guaranty, plus interest from February 14, 1962.

In Count III recovery is sought upon a promissory note in the amount of $75,000.00 wherein it is claimed that there is due and owing $69,000.00 together with $3,450.00 for overdue payments and interest from the date of the execution of the note, that is, May 26, 1960. Attorneys' fees in the amount of $7,240.00 are demanded in connection with this item.

The fourth claim has to do with an amount which is allegedly owed to plaintiff by Bob Jones Enterprises and by Bob Jones personally, arising from the financing of new and used automobiles. It is claimed that there was a balance in the amount of $232,649.21 which was owing under this agreement and that $70,298.56 of that has been satisfied, leaving $162,350.65 remaining. Attorneys' fees in the amount of $9,750.00 are sought in connection with this guaranty.

There are few factual disputes here and so it is not deemed necessary to expound the express factual findings of the Court in a formal manner. It will be sufficient to describe the facts as they appear from the evidence. In so doing we dispense with formal findings and conclusions. The several claims are taken up in the order in which they appear in the complaint.

I.

There is no dispute about the execution of the note which forms the basis of Count I of the complaint, which note was signed by Jones and by Bob Jones Enterprises. The amount of $56,666.00 is not seriously disputed and there is a dearth of evidence in the record to establish that there were no payments for which credit has not been given. In short, this is what may be described as an open and shut claim. Accordingly, plaintiff is entitled to judgment for the principal amount outstanding, that is, $56,666.00, plus interest from October 10, 1960, the date of the execution of the instrument.

Although the instrument provides for the payment of attorneys' fees amounting to fifteen per cent. of the balance, the Court is not disposed to award this sum, or any other amount for lawyers' fees since it does not appear that this amount was either incurred or paid for attorneys' fees. It is well settled in Colorado at least, that lawyers' fees are awarded only upon an indemnity basis, thus agreements to pay the same are not enforced without proof that such fees were paid or incurred. Jones v. First National Bank of Fort Collins, 74 Colo. 140, 219 P. 780; Rock Wool Insulating Co. v. Huston, 141 Colo. 13, 346 P.2d 576; Redak v. Leigh, 143 Colo. 575, 354 P.2d 1016; Burt v. Craig, 146 Colo. 173, 360 P.2d 976; Taylor v. Continental Sup-

ply Co., 10 Cir., 16 F.2d 578. There is no evidence as to the amount or value of legal service or as to a charge or payment in relation to this claim. Thus, the demand must be disallowed.

## II.

■ Preceding the execution of the guaranty in the amount of $75,000.00, which was signed by Robert T. Jones and James B. Jurgens, an extensive kiting operation had been conducted by Jones through the use of an account of one of his other companies in the Jefferson County Bank, together with the account in the Central Bank. This became apparent to Central early in January and an analysis of the account confirmed the kiting activity and the probable existence of a substantial overdraft. At that time it was anticipated that the indebtedness would amount to approximately $75,000.-00. This condition prompted Central to obtain the signature of Jones and Jurgens on the continuing warranty. As it turned out, the overdraft amounted to considerably more. When the activity finally settled down, the amount was $191,038.40. In order to eliminate this overdraft the bank required Jones, as President of Skyland Motors, to sign a promissory note in the amount of the overdraft. This, in turn, was deposited so as to bring about a black balance. The indebtedness remained but was now evidenced by the unsecured note rather than the overdraft.

In essence, Jones and Jurgens maintain that the giving of the note in the exact amount of the overdraft constituted a release of both of them on their warranty. But the contract which is described as a "continuing guaranty", is extremely broad in its terms. It guarantees the prompt payment at maturity of every note, check, draft, bill of exchange, debt and other obligation in writing, however contracted or evidenced, made, signed, drawn, accepted, endorsed for or on account of, or incurred by Skyland Motors, Inc. It also provides that the guaranty shall be continuous and open, and "shall continue at all times unconditional until canceled in writing."

■■ A short answer to the contention of the defendants is that the terms of the guaranty itself defeat the argument that there was some automatic release or discharge. By its very terms the guaranty rules out any such implied release. Quite apart from this, however, the Colorado cases hold that the giving of a note does not of itself satisfy an obligation, such satisfaction depending upon actual payment of the instrument. See First National Bank v. Newton, 10 Colo. 161, 14 P. 428; and see Globe Express Co. v. Taylor, 61 Colo. 430, 158 P. 717. It is, of course, possible for the parties to contract to release a guaranty such as this by the giving of the note, but the intention to do so must be apparent and such intention is not here apparent. See 24 Am.Jur., Guaranty, section 85. And see Hartwell & Richards Co. v. Moss, 22 R.I. 583, 48 A. 941; Britton, Bills and Notes, Section 263, p. 1031.

To bring about a discharge it would have to appear that an accord and satisfaction had been intended by the delivery of the subsequent note. The retention of the guaranty here argues persuasively against any such intention. See Britton, Bills and Notes, supra, and see 38 C.J.S., Guaranty, § 80, pp. 1249, 1250.

Although there are no Colorado decisions dealing expressly with the giving of another note to cover a guaranty previously discharged, it would appear from the Colorado cases cited that the Supreme Court of Colorado would observe the general rule which is enunciated and applied in other jurisdictions. See London & San Francisco Bank v. Parrott, 125 Cal. 472, 58 P. 164; G. F. C. Corporation v. Nesser, Mo., 273 S.W.2d 264 (1954); Canadian Bank of Commerce v. Sesnon Co., 68 Wash. 434, 123 P. 602; Federal Rubber Co. v. Pruett, 55 Ariz. 76, 98 P.2d 849, 126 A.L.R. 1238; U. S. Rubber Co. v. Champs Tires, Inc., 73 N.J.Super. 364, 180 A.2d 145; Cabrera v. American Colonial Bank, 214 U.S. 224, 29 S.Ct. 623, 53 L.Ed. 974; and see Wolff v. First National Bank, 47 Ariz. 97, 53 P.2d 1077.

The doctrine of these cases is that the giving of the note in and of itself does

not satisfy the indebtedness but merely further evidences it and does not discharge the obligations previously incurred. In the case at bar the basic facts do not give rise to any inference that there was an intent to substitute the note for the guaranty agreement. It must be concluded, therefore, that the parties intended to merely bring the bank account into a black condition and to evidence the indebtedness by means of a promissory note. Thus, it is not possible to conclude in the face of this evidence that Jurgens and Jones were released on their guaranty when the note was executed.

## III.

The defense asserted in connection with the third claim is that of James B. Jurgens only. He maintains that he did not sign the instrument on an individual basis, but did so as Vice President of Skyland Motors. He maintains that the instrument was subsequently altered and that this brought about his discharge. It is to be recalled that this note in the amount of $75,000.00 was executed by Bob Jones Enterprises, by Robert T. Jones, President, and by Robert T. Jones and James B. Jurgens in May of 1960. The note had been reduced to $69,000.00 at the time it was assigned to the plaintiff. The testimony was that the bank made the loan following authorization by the appropriate bank committees. The minutes showed that the Executive Committee approved the loan with the request that it be guaranteed or personally endorsed by "Jimmy Jurgens." Mr. Austin, an officer of the bank, took the note to the Skyland Motors and obtained Jurgens' signature. He testified that he wrote "personally" after the signature of Jurgens and did so in his presence. Jurgens denied this. However, it is highly questionable whether it was the intention of Jurgens that he sign in an official capacity in view of the fact that Jones, the president, was at all times entitled to sign for the corporation. Moreover, the form of the signatures makes it improbable that the signing was intended to be in a representative capacity. This is shown as follows:

"Bob Jones Enterprises, Inc.
by: Robert T. Jones, Pres.
x Robert T. Jones, Personally
x James B. Jurgens—Personally"

The two words "personally" as they appear above are written in different ink and are in different handwriting from the signatures so that there can be no doubt that they were obviously added after the signatures had been placed on the instrument. It is questionable, however, that Jurgens would have signed the instrument as Vice President of the corporation without at the same time showing this representative capacity following his signature; indeed, Mr. Jurgens did not testify that this was his intention. He merely says that he would not have signed it had the word "personally" been on the note at the time. Be that as it may, section 20 of the Negotiable Instruments Law, C.R.S. '63, 95–1–1, provides that a person who signs a negotiable instrument without indicating that he is signing it in a representative capacity, is personally bound. See Lazarov v. Klyce, 195 Tenn. 27, 255 S.W.2d 11; Betz v. Bank of Miami Beach, 95 So. 2d 891; Murphy v. Reimann Furniture Mfg. Co., 183 Or. 474, 193 P.2d 1000. See also 7 Fletcher Cyclopedia of the Law of Private Corporations (perm. ed.) § 3039. These cases all hold that where one adds his signature under that of a corporation, he is bound personally.

It follows, therefore, that the defendant Jurgens, by signing as he did, became personally obligated on the instrument. Thus, the addition of the word "personally" whether added at the time, as the witness Austin maintained, or later, without the knowledge of Jurgens, added nothing to the defendant Jurgens' obligation; he had already become personally bound and thus the alteration, if any (and I do not believe that there was one), was not material. The word "personally" was superfluous. It cannot be held to have any legal consequence

—to have in any way modified the liability undertaken by Jurgens when he signed the instrument. It follows, therefore, that both Jurgens and Jones are liable under Count III of the complaint for the balance due on the May, 1960 instrument.

## IV.

█ The fourth and final claim of the complaint has to do with the continuing guaranty signed by Bob Jones Enterprises and by Jones personally to cover the line of credit extended by plaintiff in connection with the purchase by Skyland Motors of new cars. A power of attorney had been executed in favor of one White of Ford Motor Company, authorizing him to sign notes on a daily basis as new inventory was shipped. These notes were secured by chattel mortgages on the vehicles themselves. However, from time to time vehicles were sold without paying off the chattel mortgage and the indebtedness mounted in a relatively short time. The following summary shows the extent of this indebtedness:

| | |
|---|---|
| $577,118.94 | owing on new car trust receipts "floor plan" notes |
| 367,999.73 | received on repossession of new cars |
| $209,119.21 | subtotal owing on new cars |
| 54,590.00 | owing on used car "floor plan" notes |
| 31,060.00 | received on repossession of used cars |
| $ 23,530.00 | subtotal owing on used cars |
| $232,649.21 | total amount owing on automobile floor plan notes. |

———◆———

In addition to the amounts received on repossession of the cars, various other amounts were recovered from sale of other items. These amounts are as follows:

| | | |
|---|---|---|
| | $ 24,552.51 | from used cars not included in the "floor plan" |
| | 31,000.96 | accounts receivable |
| | 8,721.25 | bank account |
| | 16,791.53 | furniture and fixtures |
| | 51,444.06 | parts resold to Ford Motor Company |
| | $132,510.31 | |
| less | 29,210.79 | foreclosure expenses, attorney fees, auditing fees |
| | $103,299.52 | total received on foreclosure of non-"floor plan" autos, etc. |

———◆———

When subtracted from the $232,649.21 owing on the automobiles, a balance of $129,349.69 remains.

The controversy which exists in this area stems from Jones' contention that Ford Credit Company failed to render an accounting of the amounts received from the sale of the various property which had been foreclosed. Bob Jones Enterprises and Jones maintain that the burden is on the plaintiff to establish that the amounts received were reasonable. Extensive evidence was adduced at the trial with regard to the manner of conducting the sale of the property seized and the amounts realized. This evidence is such as to prima facie establish that the sales were reasonable and that the prices obtained were also reasonable. The new automobile inventory was sold to Ford Motor Company at wholesale prices, the same prices that had been paid by Jones when the purchases were made. This was true also of parts which had not become obsolete. An effort is made to establish that the used cars

were sold in a manner which raises a question as to reasonableness of the sales. The difficulty here is that the defendants have not offered any specific evidence as to the reasonable market value of the used car inventory; consequently, there are no facts before the Court which would justify a conclusion that the sale of the used cars, or of any other property, was on an unreasonable basis. The evidence before the Court tends, on the contrary, to establish that under the circumstances the sales were conducted reasonably and the prices obtained were not unfair. There is, to be sure, evidence that some of the used cars were wholesaled. This does not of itself support the position of Jones. The Court would be unable to find any figures in the evidence other than sale prices which would be supported. Thus, a reduction of the recovery would have to be on some arbitrary basis. It must be concluded, therefore, that this contention of Jones and of Bob Jones Enterprises, is without merit and that the plaintiff is entitled to recover.

In view of the foregoing findings and conclusions, it is

Ordered that judgment be entered in favor of the plaintiff and against the defendants hereinafter named as follows:

1. Against Bob Jones Enterprises and Robert T. Jones on the claim contained in Count I of the complaint, in the amount of $56,666.00, with interest from October 10, 1960;

2. Against Robert T. Jones and James B. Jurgens on the continuing guaranty agreement of January, 1961, in the amount of $75,000.00, plus interest from and after February 14, 1962, the date that the demand was made on the said guaranty;

3. Against Robert T. Jones and James B. Jurgens and Bob Jones Enterprises, in the amount of $69,000.00 plus interest shown by the evidence to be due and owing on the May 20, 1960, note in the amount of $75,000.00;

4. Against Bob Jones Enterprises and Robert T. Jones on the several obligations incurred under the continuing warranty and promissory note arrangement of August 19, 1960, in the amount of $129,349.69, together with interest from the date of entry of judgment.

For the reasons stated in part I of this Opinion, the demand for attorneys' fees is denied.

The Court has carefully canvassed the record in an effort to discover merit in the defenses. This effort has been unsuccessful.

Counsel for plaintiff will submit judgments in accordance with the foregoing findings and conclusions.