## No. 16,958.

### FIRST NATIONAL BANK OF OGALLALA, NEBRASKA *v.* CHUCK LOWEN, INC.

(261 P. [2d] 158)

Decided August 10, 1953.   Rehearing denied September 14, 1953.

Mr. ROBERT A. DICK, for plaintiff in error.

Mr. Richard H. Shaw, for defendant in error.

*En Banc.*

Mr. Chief Justice Stone delivered the opinion of the court.

One Harney, who was a dealer in Packard automobiles at Ogallala, Nebraska, acquired a new Packard car from the manufacturer and executed a chattel mortgage thereon to plaintiff, First National Bank of Ogallala, to secure payment of his promissory note, delivering therewith to plaintiff the regularly assigned manufacturer's certificate of origin showing ownership of said automobile by him, which certificate has since been in the actual possession of said bank. Thereafter Harney sold the mortgaged automobile to defendant Chuck Lowen, Inc., a licensed dealer in Colorado, giving an ordinary bill of sale as his only evidence of title and reciting therein that the car was free from all encumbrances. Defendant Lowen sold said automobile, giving the purchaser a dealer's bill of sale as required by our statute to be the basis of a certificate of title to a new motor vehicle to be issued to the purchaser. Upon learning of the removal and sale of the automobile, the mortgagee bank brought action for conversion against Lowen. By answer defendant Lowen set up the plaintiff's failure to record the mortgage and defendant's lack of actual or constructive notice of the mortgage until it had sold the car to an innocent purchaser. Summary judgment was entered below in favor of defendant and plaintiff bank seeks reversal here.

Ordinarily in such situation, the rule of comity should apply. Ann. 13 A.L.R. (2d) 1312. We held in *Mosko v. Matthews,* 87 Colo. 55, 284 Pac. 1021, that generally a chattel mortgage properly executed and recorded according to the law of the place of execution of the mortgage and location of the property, will, if valid there, be held

valid here against creditors and purchasers in good faith upon the removal of the property here by the mortgagor, unless we have a statute to the contrary or the transaction contravenes our settled law or policy.

While not so posed by counsel, we think the arguments before us present three questions. First, did the failure to record the chattel mortgage in the Nebraska county of location of the property justify denial of its validity here? Second, do we have a statute declaring such mortgage invalid? Third, does the transaction contravene our settled policy?

The pertinent Nebraska statute provides in substance that no person shall acquire any right to a motor vehicle until he shall have had issued to him a certificate of title or delivered to him a manufacturer's or importer's certificate for the same; nor shall any waiver or estoppel operate against a person having possession of such certificate for a valuable consideration. It further provides that any mortgage covering a motor vehicle, if it is accompanied by delivery of the manufacturer's or importer's certificate and followed by actual and continual possession of same by the holder of the instrument, shall be valid as against creditors and subsequent purchasers, but otherwise shall not be valid against them. Under said Nebraska statute, the bank acquired a valid lien to secure its mortgage on the car in the only way it could have been obtained.

Our Certificate of Title Act, chapter 16, section 13(31), '35 C.S.A., 1952 Cum. Supp., provides: "No mortgage, as herein defined, on a motor vehicle, filed for record in any state other than the state of Colorado subsequent to the effective date of this subdivision, shall be valid and enforceable against the rights of subsequent purchasers for value, creditors or mortgagees, having no actual notice of the existence thereof; provided, however, that if the certificate of title for such vehicle, whether issued under the laws of this state or any other state, bears thereon any notation adequate to apprise a purchaser,

creditor, or mortgagee of the existence of such mortgage at the time any third party acquires a right in the motor vehicle covered thereby, such mortgage and the rights of the holder thereof shall be enforceable in this state the same and with like effect as though such mortgage were filed in the state of Colorado and noted on the certificate of title in the manner prescribed in this subdivision."

From the above statutes, it appears that the recording of the chattel mortgage in Nebraska would have had no effect as to its validity here, and under the Nebraska statute the mortgage was valid there without such recording. We cannot hold necessary the doing of an act declared to be vain and fruitless by the laws of both states.

As to the second question: We find no statute declaring unenforceable in Colorado such mortgage as that before us. In view of section 13(31), above quoted, the provisions of section 13(18) requiring filing of mortgages does not apply to foreign mortgages. Under section 13(31), the recognition of a foreign mortgage here depends not upon its being filed for record, but upon its appearing on the certificate of title. That section must be construed together with section 13(8) which provides that except in cases not here applicable no person shall sell a motor vehicle without delivering a certificate of title and that no purchaser shall acquire any right, title or interest in a motor vehicle unless he shall first obtain from the transferor the certificate of title thereto. By virtue of that section, on failure of Harney to deliver such certificate, whether because it showed a mortgage on its face or because it was deposited with the mortgagee, the purchaser could acquire no title as against prior mortgagees, and his rights are subordinate to such as are valid.

Having obtained a dealer's bill of sale from Harney, Lowen relies on section 13(11) which provides: "Upon the sale or transfer by a dealer of a new motor vehicle, such dealer shall, upon the delivery thereof, make, exe-

cute and deliver unto the purchaser or transferee a good and sufficient bill of sale therefor * * *." However, section 13(2)(i) defines a dealer as, "Any person * * * licensed under the laws of this state to engage in the business of buying, selling, exchanging or otherwise trading in motor vehicles, as herein defined." Even assuming that we should follow the finding of the trial court without supporting evidence that the car was still a "new vehicle" under the statutory definition thereof, still Harney was not a dealer under our statutory definition. There is no suggestion that he had been licensed under the Colorado law or had filed the bond required thereby to protect those who should deal with him. Accordingly, Lowen of necessity dealt with Harney as with any other stranger bringing an automobile for sale without any evidence of title. Under section 13(8) the bill of sale gave him no title as against innocent third parties and he purchased it at his own risk, subject to valid claims.

As to the third question, a mere variance in the laws of two states does not in itself evidence difference in policy. *Wisdom v. Keithley,* 237 Mo. App. 76, 167 S. W. (2d) 450. Under our former policy in Colorado, the validity of chattel mortgages as to innocent third parties was dependent on recording or filing them in the office of the proper county clerk, analagous to the provisions for protection of title to real estate. However, the mobility of motor vehicles and their frequent sale in states far distant from the county of the mortgage filing has resulted in a new method of protection by means of showing mortgages on the title certificate, which can be carried with the car, rather than by record in the files of a distant and probably unknown county. Both Colorado and Nebraska have adopted this new method of protection of title to motor vehicles and, though differing in details, they represent a like policy. Among other differences, the Nebraska law logically requires that the certificate as to title start with the manufac-

turer or importer, who certifies title to the dealer, while under our Colorado statute certification begins with the first retail purchaser, based upon bill of sale from the dealer. The first purchaser in Colorado is protected in theory against a dealer's prior mortgage by means of a bond required to be filed by the dealer for the purchaser's protection, while in Nebraska he is protected by receipt of the manufacturer's certificate. Our policy does not support a title protected neither by certificate nor bond.

Lowen insists that the bank mortgage before us is a secret lien, and relies on the several cases, beginning with *Turnbull v. Cole*, 70 Colo. 364, 201 Pac. 887, where, contrary to the weight of authority, we held that conditional sales contracts executed in other states pursuant to their statutes constituted secret liens and were opposed to our public policy and therefore unenforceable here. Had Harney held in his possession the manufacturer's certificate or any other certificate of title not disclosing the bank's mortgage, it would indeed have constituted a secret lien, but under the policy of our law, as well as that of Nebraska, the requisite of clear title, other than that of a licensed dealer to a new car, is the possession of a certificate free of lien. Our statute section 13 (8) makes title, other than to a new vehicle purchased from a Colorado dealer, depend on receipt of such a certificate, and ignorance of mortgages must be proven by the certificate.

In *Motor Investment Co. v. Breslauer*, 64 Calif. App. 230, 221 Pac. 700, the reason for applying the rule of comity in such cases was well expressed by Mr. Justice Hart in words which have been approved by the Supreme Court of California in *Mercantile Acceptance Co. v. Frank*, 203 Calif. 483, 265 Pac. 190, and by the Supreme Court of Michigan in *Metro-Plan Inc. v. Kotcher-Turner Inc.*, 296 Mich. 400, 296 N. W. 304: "The rule, however, appears to be founded upon the principles of equity and natural justice. As applied to cases of the

character of the one before us, it can produce no harsh or unjust results. The principle underlying it may be analogized to that upon which the owner of property stolen from him and taken or transported to another state may follow the thief into the latter state and reclaim or take possession of the pilfered goods or chattels wherever found. A state may, it is true, refuse to recognize the rule of comity in such cases, but should it do so, it would become a party to every such fraudulent transaction. It is not going too far to say and to hold that it is preferable and more desirable that an innocent purchaser or incumbrancer of personal property brought into a state under such circumstances as those characterizing the transaction with which we are here concerned should suffer loss, which possibly his own improvidence or want of diligence has brought to him, than that the state should assume and maintain an attitude towards such transaction which would necessarily stigmatize it as an accessory after the fact to the fraud inhering therein."

Judgment reversed and cause remanded.