No. 22074.

UNITED FIRE AND CASUALTY COMPANY *v.*
DELORES F. PEREZ AND FRANK D. PEREZ.
(419 P.2d 663)

Decided October 24, 1966.    Rehearing denied November 21, 1966.

YEGGE, HALL, TREECE and EVANS, for plaintiff in error.

SHELDON and NORDMARK, for defendant in error Boston
Insurance Company.

EDWARD B. TOWEY, for defendants in error Delores F.
Perez and Frank D. Perez.

*In Department.*

Opinion by Mr. Justice Moore.

Defendants in error, hereinafter referred to as the plaintiffs, secured separate judgments against one Gary E. Reese based upon their respective claims for damages resulting from an automobile accident. The judgment entered on February 10, 1965, in favor of Delores F. Perez was for the sum of $27,849.71, and the judgment in favor of Frank D. Perez was for $556.81 plus costs. No writ of error was prosecuted by the judgment debtor Reese.

The plaintiffs caused writs of garnishment to be served upon United Fire and Casualty Company and Boston Insurance Company, each of whom had issued public liability policies covering the automobile which Reese was driving at the time of the accident which caused the damage to the plaintiffs. United Fire and Casualty Company, hereinafter referred to as United, admitted liability for one-half the total amount of the judgments. It claimed however that Boston Insurance Company, hereinafter referred to as Boston, was liable for payment of the other half. Each of the companies filed an answer to the garnishee summons served upon them. The plaintiffs traversed the answers and the writ of error now before this court is directed to the judgment of the trial court which was entered in the garnishment proceedings. This judgment in pertinent part reads as follows:

"* * * In accordance with the findings of fact and conclusions of law, the Court

"DOTH ORDER:

"That judgment enter in favor of the plaintiff, Delores F. Perez and against United Fire and Casualty Company, Garnishee, in the amount of Twenty Nine Thousand Seventy Eight Dollars and Ninety Four Cents ($29,078.94), together with costs of the garnishment proceedings.

"IT IS FURTHER ORDERED, that judgment enter

in favor of plaintiff, Frank D. Perez, and against United Fire and Casualty Company, garnishee, in the amount of Six Hundred Eleven Dollars and Ninety Eight Cents ($611.98), together with the costs of the garnishment proceedings.

\* \* \*

"IT IS FURTHER ORDERED, that the garnishment against Boston Insurance Company, garnishee, is discharged and judgment is entered in favor of said Boston Insurance Company and against Delores F. Perez and Frank D. Perez, garnishors (sic)."

There is no dispute in the facts giving rise to the question of law presented. They are all presented by stipulation, written documents, or deposition under which no conflict in evidence arises.

We briefly state the pertinent facts as follows: On November 7, 1962, Gary E. Reese was driving a 1953 Lincoln automobile and was involved in the accident which caused the damage to plaintiffs. Theretofore, and on August 9, 1962, United issued its insurance policy to him covering the vehicle and it was in full force at the time of the accident. On the date of the accident Melvin M. Edmonds and Margaret J. Edmonds were the registered owners of the 1953 Lincoln. On February 2, 1962 (eleven months prior to the accident) Boston issued its insurance policy covering the Lincoln automobile and the insured named therein was the above-mentioned Melvin M. Edmonds. This policy was in force at the time of the accident. It contained the following language, inter alia:

*"Persons Insured*: The following are insureds under Part I:

"(a) With respect to the owned automobile,

"(1) The named insured and any resident of the same household,

"(2) Any other person using such automobile, provided the actual use thereof is with the permission of the named insured;"

The policy issued by United, as well as that issued by Boston, had an "other insurance" clause which provided that the company would not be liable for a greater proportion of the loss than the applicable limit of liability of its policy bore to the total applicable limit of liability of all valid and collectible insurance.

The judgment of the trial court was based on the conclusion that at the time of the accident Mr. Reese was not driving the Lincoln automobile "with the permission of the named insured" and that the insurance policy issued by Boston did not cover the accident. It was the opinion of the trial court that Reese was driving the automobile as owner thereof and for that reason there was no liability on the part of Boston.

Mr. Edmonds bought the Lincoln automobile in 1953. Some time in October 1961 Mr. Reese, who was a friend of Mr. Edmonds, expressed a desire to purchase it. They entered into a verbal agreement under which Reese was to pay Edmonds $500 for the car but no time was set within which the purchase price should be paid. It was understood that Reese would pay "when he could." When this agreement was made the car was turned over to Reese who agreed to secure his own insurance on it. There was no delivery of the certificate of title to the automobile at that time. It was registered in the name of Mr. and Mrs. Edmonds and the title certificate was in the possession of the Finance Acceptance Company. At the time of the sale of the car there was a lien on the Lincoln and other personal property owned by Edmonds, the total amount of which was $1,876.56. After the sale Mr. Edmonds continued to make the monthly payments on the Finance Acceptance Company loan.

Shortly prior to the date of the accident Mr. Reese made a payment of $50 on the purchase price of the car. In February 1963 he paid Mr. Edmonds $475 representing the balance of the purchase price agreed upon, plus $25 "because of the delay in payment." On February 13, 1963, Mr. Edmonds paid off the balance of the indebted-

ness due the Finance Acceptance Company from whom he received the certificate of title which was thereupon forwarded to Reese with the proper assignment of interest. Upon this state of the record the trial court commented as follows:

"THE COURT: As between Edmonds and Reese it seems to me from the uncontradicted statement of Counsel and the facts in stipulation the intention was clear between the two parties, and uncontradicted, that Edmonds intended to sell and Reese intended to buy this automobile, and that that purchase was consummated by delivery, and that thereafter Edmonds exercised no dominion whatsoever over the automobile, nor did he make any attempt to exercise any control whatever over the car.

"As I interpret the Colorado registration statute, as the Supreme Court has interpreted it, that statute would not prevent the sale of an automobile by one person to another without a certificate of title. As between them the sale would be good if the intention was clear, and I think in this case the intention was clear."

We hold that the policy of insurance issued by Boston to Edmonds cannot be extended to cover the vendee (Reese). His status was synonymous with that of a conditional vendee and upon delivery of the automobile to him his right to the use of the car was by virtue of his ownership and his unrestricted right to control it, and not by virtue of any grant of permission to him by Edmonds. *Olin Mathieson Chemical Corp. v. Southwest Casualty Company,* 149 F. Supp. 600; *Farm Bureau Mutual Insurance Company of Indiana v. Emmons,* 122 Ind. App. 440, 104 N.E.2d 413; *Virginia Auto Mut. Ins. Co. v. Brillhart,* 187 Va. 336, 46 S.E.2d 377. From the case last above cited we quote the following pertinent language:

"The problem presented is one of *coverage* * * *.

The question is whether the coverage afforded by the policy to Huffman [the conditional vendor] was ex-

tended or transferred to Owens [the vendee]. If Owens was covered or protected by the policy, then Brillhart [a guest of Owens] was entitled to recover of the Insurance Company. On the other hand, if Owens was not so protected or covered, Brillhart's claim against the Insurance Company cannot be sustained.

\*   \*   \*

"In the case before us upon the sale of the car Owens, the vendee, took immediate possession of it. Huffman's possession of it, and his right to control its use, ceased and passed to Owens. And this was so although Huffman retained a lien on the car for a part of the unpaid purchase price. After the consummation of the sale, Owens' use of the car was by virtue of his ownership of it and his right to control it, and not by virtue of the grant of any permission to him by Huffman."

Counsel for United rely on C.R.S. 1963, 13-6-8, which provides as follows:

"Except as provided in section 13-6-11, no person shall sell or otherwise transfer a motor vehicle to a purchaser or transferee thereof without delivering to such purchaser or transferee the certificate of title to such vehicle, duly transferred in the manner prescribed in section 13-6-9, and, no purchaser or transferee shall acquire any right, title or interest in and to a motor vehicle purchased by him unless and until he shall obtain from the transferor the certificate of title thereto, duly transferred to him in accordance with the provisions of this article."

This Act has been construed to make financial transactions involving automobiles more secure and certain. It will be noted that other or different types of transactions are not made void particularly with reference to the parties to the transaction. The Certificate of Title Act has only been invoked where the rights of third parties are involved. *Littell v. Brayton Motor and Accessory Company,* 70 Colo. 286, 201 Pac. 34; *Forney v. Jones,* 76 Colo. 319, 231 Pac. 158; *Jorgensen v. Morris,*

122 Colo. 94, 220 P.2d 359; *First National Bank of Ogallala, Nebraska v. Chuck Lowen, Inc.*, 128 Colo. 104, 261 P.2d 158.

The judgment is affirmed.

MR. CHIEF JUSTICE SUTTON and MR. JUSTICE SCHAUER concur.