## No. C-396

## Guy Martin Buick, Inc. v. The Colorado Springs National Bank
(519 P.2d 354)

Decided February 19, 1974.

168

Kane, Donley & Wills, Lee Wills, for petitioner.

Spurgeon, Aman & Hanes, Richard W. Hanes, Gregory R. Piche, for respondent.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

This appeal requires us to determine whether certain provisions of the Colorado Uniform Commercial Code (C.R.S. 1963, 155-1-101, *et seq.*) and the Colorado Certificate of Title Act (C.R.S. 1963, 13-6-1, *et seq.*) are inconsistent or can be reconciled. Resolution of this case centers on a determination of whether an automobile dealer

or a bank has a superior interest in three automobiles. The automobiles were purchased from the dealer by another automobile dealer who had a financing agreement, together with a floor plan, with the bank. Creditors' rights came into conflict when the purchasing dealer's check, which was tendered as payment for the automobiles, was dishonored and a default occurred on the bank's loan to the purchasing dealer. At the time the check was dishonored, the purchasing dealer had possession of the automobiles and the bank had possession of the titles to the automobiles. The trial court ruled that the selling dealer's interest in the property prevailed over the bank's interest. The Court of Appeals, with one judge dissenting, reversed and held that the bank's interest had priority. *Guy Martin Buick, Inc. v. Colorado Springs National Bank,* 32 Colo. App. 235, 511 P.2d 912 (1973). We affirm the Court of Appeals.

No dispute exists regarding the facts which brought about this litigation. On or about May 15, 1970, Guy Martin Buick contracted to sell, and Mark III agreed to purchase, three used automobiles for $2500 in cash. On the same day, Guy Martin Buick delivered the automobiles to Mark III and received Mark III's check for $2700, drawn on the Colorado Springs National Bank, which was payable on demand.[1] As part of the sale agreement, the certificates of title to the automobiles were not to be delivered until Guy Martin Buick could obtain a certificate of title covering one of the three automobiles from Maryland, where the automobile was originally registered. On May 18, 1970, three days after the sale, Mark III contacted the Colorado Springs National Bank and requested a loan of $2500 to cover the purchase price of the automobiles. The bank, while processing Mark III's loan application, contacted Guy Martin Buick to confirm that the sale had taken place and to notify Guy Martin Buick of the bank's intention to take a security interest in the automobiles, if the bank made a loan to Mark III.

After further negotiations between Mark III and the bank,

[1] The additional $200 contained in Mark III's check related to a fourth automobile and is not involved in this case.

Guy Martin Buick agreed to deliver the title certificates directly to the bank as soon as the Maryland certificate of title was received. On this assurance, the bank approved the loan and deposited $2500 in Mark III's account. On the same day, Mark III executed a security agreement in favor of the bank, which identified and included the three cars which Mark III purchased from Guy Martin Buick to secure the $2500 loan.

On May 25, 1970, Guy Martin Buick delivered the three certificates of title to the bank, and at about the same time presented Mark III's $2700 check for collection. Mark III's check was dishonored because of insufficient funds. Guy Martin Buick immediately took possession of the automobiles at Mark III's display lot and asked the bank to return the certificates of title to the three automobiles. The bank refused and demanded that Guy Martin Buick deliver the automobiles to the bank.

Guy Martin Buick brought suit to obtain a mandatory injunction to force the Colorado Springs National Bank to surrender the title certificates. The bank counterclaimed and sought a mandatory injunction to compel Guy Martin Buick to deliver the automobiles. Thereafter, Guy Martin Buick applied for a preliminary injunction to obtain the title certificates from the bank, so that the automobiles could be sold to mitigate damages. The trial court issued the preliminary injunction, and the automobiles were sold on a wholesale basis for $1850.

We must determine the priorities which each of the creditors have as a result of the transactions set forth above. Does Guy Martin Buick's interest in the automobiles or the conflicting interest of the bank in the same automobiles have priority under the provisions of the Colorado Certificate of Title Act and Articles 2 and 9 of the Colorado Uniform Commercial Code? The legal issues turn upon the nature of the interest conveyed to Mark III by Guy Martin Buick and Mark III's ability to convey the interest which it acquired to the bank, or a third party, before Guy Martin Buick presented Mark III's check for collection.

As part of the sale agreement, which is subject to the provision of Article 2 of the Colorado Uniform Commercial Code, Guy Martin Buick demanded payment upon delivery of the automobiles. Normally, such a provision in a cash sale transaction would allow a purchaser of goods, such as Mark III, to retain or dispose of the goods as he saw fit once the agreed-to purchase price was tendered. C.R.S. 1963, 155-2-507(2). However, under the factual chronology of this case, Mark III, by tendering its check in payment of the purchase price, was not free to encumber or dispose of the automobiles. Mark III's inability to immediately encumber or dispose of the automobiles stems from the nature of the goods transferred and the requirements embodied in the Colorado Certificate of Title Act and differs from most cash sale transactions under the Code. *See* C.R.S. 1963, 13-6-8; C.R.S. 1963, 155-2-403.

Under the Uniform Commercial Code, the purchaser of goods in a cash sale transaction normally acquires full title to the goods which he purchases after payment is made, but the purchaser is limited to receiving a voidable title when the purchase price is conveyed in the form of a check. C.R.S. 1963, 155-2-511(3). However, the voidable title which a purchaser receives when payment is made by check is dependent upon the seller's "power to transfer" an interest in the goods conveyed. C.R.S. 1963, 155-2-403(1). With respect to the sale and transfer of automobiles, the Colorado Certificate of Title Act sets forth specific requirements which limit a seller's power to transfer any interest in a motor vehicle and, thereby, affects the legal status of the title which a purchaser receives. The pertinent provisions of C.R.S. 1963, 13-6-8, provide:

"[N]o purchaser or transferee shall acquire any right, title or interest in and to a motor vehicle purchased by him unless and until he shall obtain from the transferor the certificate of title thereto, duly transferred to him in accordance with the provisions of this article."

The purpose of this provision is to insure that purchasers of automobiles, whether individual citizens or

dealers, as well as lenders who finance automobile purchases, can readily and reliably ascertain the status of the seller's title to the automobile without recourse to other official state records. 1967 Perm. Supp., C.R.S. 1963, 13-6-19. The provision is intended to hold in abeyance both the seller's power to transfer and the purchaser's right to receive any right, title or interest in the automobile to be sold until such time as the certificate of title is delivered to the purchaser.

■ In this case, the seller, Guy Martin Buick, did not deliver the certificates of title to the purchaser, Mark III, at the time Mark III tendered its check as payment for the automobiles. Until the certificates of title were delivered, Mark III acquired no right, title or interest, voidable or otherwise, in the automobiles which he could convey to a third party. C.R.S. 1963, 13-6-8; *United Fire and Casualty Co. v. Perez,* 161 Colo. 31, 419 P.2d 663 (1966). *See Waggoner v. Wilson,* 31 Colo. App. 518, 507 P.2d 482 (1972).

■ However, before Guy Martin Buick presented Mark III's check for collection, the certificates of title were delivered to the Colorado Springs National Bank as security for the bank's loan to Mark III, in accordance with the security agreement between Mark III and the bank. From the record, it may be implied that the bank took possession of the certificates of title as Mark III's agent. *Granite State Fire Ins. Co. v. Mitton,* 98 F.Supp. 706 (D. Colo. 1951), *aff'd.* 196 F.2d 988 (10th Cir. 1952); *Rhodes v. Industrial Commission,* 99 Colo. 271, 61 P.2d 1035 (1936); *Globe Express Co. v. Taylor,* 61 Colo. 430, 158 P. 717 (1916). *See* C.R.S. 1963, 155-1-103. At the moment Guy Martin Buick delivered the motor vehicle title certificates to Mark III, through the bank as its agent, the requirements of C.R.S. 1963, 13-6-8 were satisfied. Moreover, once the certificates of title were properly transferred, Mark III was clothed with voidable title and could legally encumber the automobiles. C.R.S. 1963, 155-2-403(1); C.R.S. 1963, 155-2-511(3).

Colorado Springs National Bank's Interest

After Mark III delivered its check to Guy Martin Buick,

but before the certificates of title were transferred to the bank, as Mark III's agent, Mark III executed a security agreement with the Colorado Springs National Bank. The security agreement was intended to create a security interest in the automobiles to secure repayment of the bank's financing loan.[2] C.R.S. 1963, 155-9-102. However, as has been stated above, until the certificates of title were properly transferred to Mark III's agent, no right, title or interest was created in Mark III which would enable Mark III to legally convey or encumber the automobiles. Therefore, although the bank and Mark III fully intended that the security interest attach to the automobiles at the time the loan funds were deposited in Mark III's account, the absence of any legal right, title or interest by Mark III in the · automobiles prevented the bank's security interest from attaching prior to the time that the certificates of title were delivered. C.R.S. 1963, 155-9-204(1). Whether the bank's security interest attached when the certificates of title were finally delivered to the bank depends upon other provisions of the Colorado Uniform Commercial Code.

 C.R.S. 1963, 155-4-403(1) provides, in part:

"A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase, the purchaser has such power even though:

. . . .

"(b) The delivery was in exchange for a check which is later dishonored . . . ."

Moreover, "purchase" and "purchaser" are defined as:

" 'Purchase' includes taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift, *or any other*

---

[2] The provisions of the Colorado Uniform Commercial Code relating to the filing, recording, releasing, renewal, and extension of chattel mortgages, as the term is defined in C.R.S. 1963, 13-6-2(14), are not applicable to automobiles, except where the automobile is held for sale as inventory. 1967 Perm. Supp., C.R.S. 1963, 13-6-19. *See* C.R.S. 1963, 155-9-109. Since the three automobiles involved in this transaction were held for sale as inventory, the provisions of the Colorado Uniform Commercial Code apply in their entirety.

174

*voluntary transaction creating an interest in property.*"
[Emphasis added.] C.R.S. 1963, 155-1-201(32).
" 'Purchaser' means a person who takes by purchase." C.R.S.
1963, 155-1-201(33).
*See* C.R.S. 1963, 155-1-201(3). In our view, the definition of
"purchase" and "purchaser," as set forth in the Colorado
Uniform Commercial Code, are sufficiently broad to encom-
pass a lender who takes a security interest in goods as
security for its loan. *In Re Hayward Woolen Co.,* 3 U.C.C.
Rptr. 1107 (United States District Court, Mass. 1967);
*First-Citizens Bank & Trust Co. v. Academic Archives, Inc.,*
10 N.C.App. 619, 179 S.E.2d 850 (1971); *Stumbo v. Paul B.
Hult Lumber Co.,* 251 Or. 20, 444 P.2d 564 (1968); *Jones v.
Butler,* 182 Neb. 626, 156 N.W.2d 778 (1968); *Anderson,* 1
*Uniform Commercial Code* §§ 1-201; 99 and 101 (2d ed.
1970). Unless there is some showing of conduct amounting
to bad faith, a lender receives an enforceable right to its
security interest as a purchaser, even though the seller of the
security interest has only a voidable title to the underlying
goods. C.R.S. 1963, 155-2-403(1). Thus, after the certificates
of title were delivered to the bank, Mark III acquired a
voidable title and could convey an enforceable right in the
automobiles to the lending bank as a good faith purchaser for
value, even though Mark III's check to Guy Martin Buick was
later dishonored.

Therefore, under the facts of this case, the bank's security
interest attached to the automobiles at the same instant that
the titles were delivered to the bank. C.R.S. 1963, 155-9-
204(1). Since there is no evidence in the record which
indicates that the bank filed a financing statement with the
proper authorities to perfect its security interest, it held an
unperfected security interest in the automobiles under the
Colorado Uniform Commercial Code at the time Guy Martin
Buick reclaimed the automobiles. C.R.S. 1963, 155-9-
302—305.

Guy Martin Buick's Interest

When the certificates of title to the automobiles
were delivered to the bank, Mark III's voidable title came

into existence, and the bank's security interest attached. It was only after the certificates of title were delivered that Guy Martin Buick presented Mark III's check for collection. Mark III's check was subsequently dishonored and, according to the provisions of C.R.S. 1963, 155-2-507(2), a right to reclaim the automobiles arose immediately in favor of Guy Martin Buick. In an effort to establish priority in the automobiles over the bank's unperfected security interest, Guy Martin Buick contends that its right to reclaim is a species of security interest recognized by the Colorado Uniform Commercial Code which was perfected by possession when Guy Martin Buick physically reclaimed the automobiles. C.R.S. 1963, 155-9-312. Guy Martin Buick further contends that since its security interest in the automobiles was perfected and, therefore, superior to the bank's unperfected security interest, that the Court of Appeals' decision should be reversed. If the right to reclaim created by C.R.S. 1963, 155-2-507(2) were a security interest, we would be compelled to agree with Guy Martin Buick's argument. However, in our view, the right to reclaim goods sold in a cash sale transaction, as set forth in the Colorado Uniform Commercial Code, is not and was not intended to be a security interest. *Re Helms Veneer Corp.,* 287 F.Supp. 840 (W.D.Va. 1968); Braucher, *Reclamation of Goods From a Fraudulent Buyer,* 65 Mich. L. Rev. 1281 (1967); 2 *Anderson, Uniform Commercial Code* § § 2-507; 8 and 13 (2d ed. 1970); *Nordstrom, Law of Sales* § § 166, 170, and 171 (1970). The right to reclaim created by C.R.S. 1963, 155-2-507(2) is a right to undo the transaction, not a right to "secure" payment of the price as required by the definition of "security interest" under C.R.S. 1963, 155-1-201(37). *Cf. Bloch v. Mill Factors Corp.,* 119 F.2d 536 (2d Cir. 1941). *See* 1 *Gilmore, Security Interests in Personal Property* § 11.1 (1965). The right to reclaim is not a species of interest in the goods which is the result of a transaction "intended to create a security interest" and is not created by contract as contemplated within the meaning of C.R.S. 1963, 155-9-102. Moreover, C.R.S. 1963, 155-2-702(3) states that successful

reclamation "excludes all other remedies," and the creation of a security interest out of the right to reclaim might allow recovery which would be greater than the mere recovery of goods originally transferred.

Therefore, Guy Martin Buick's interest in the automobiles, if any, is limited to a right to reclaim upon the dishonor of Mark III's check. *See Nordstrom, Law of Sales* §§ 165-170 (1970).

Priority of Interests

The declared policy of the Colorado Uniform Commercial Code requires that a security agreement shall be effective between the parties and against other parties, except as is specifically provided otherwise in the Code. C.R.S. 1963, 155-9-201. The priority provisions of the Code delineate which interests in goods are superior to unperfected security interests. C.R.S. 1963, 155-9-301. The right to reclaim goods conveyed as part of a cash sale transaction created by C.R.S. 1963, 155-2-507(2), is not one of the interests which is listed as having priority over an unperfected security interest. Therefore, the bank's unperfected security interest, under the facts presented in this case, had priority over Guy Martin Buick's right to reclaim the automobiles.

Accordingly, we affirm the Court of Appeals.

MR. JUSTICE GROVES concurs in result.

MR. JUSTICE DAY dissents.