Anita Donez SACHTJEN, individually, as next friend of Caela Anisa Sachtjen, a minor, and as Personal Representative of the Estate of Wendy L. Emken (deceased), Petitioner,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin insurance company authorized to do business in Colorado, Respondent.

No. 01SC481.

Supreme Court of Colorado, En Banc.

July 1, 2002.

Charles M. Hobbs, Brad D. Redmiles, Fort Morgan, Colorado, Attorneys for Petitioner.

Grund & Breslau, P.C., Della S. Nelson, Denver, Colorado, Attorneys for Respondent.

Justice COATS delivered the Opinion of the Court.

Anita Sachtjen sought review of the court of appeals' decision in *American Family Mutual Insurance Co. v. Sachtjen*, No. 00CA1415 (Colo.App. May 31, 2001)(not selected for official publication), affirming a declaratory judgment in favor of American Family Mutual Insurance Company. The district court declared that American Family had no liability for damages resulting from an accident involving a motor vehicle that was being driven by a conditional vendee rather than the American Family policy holder. It concluded that the driver became the owner of the vehicle upon entering into the conditional sale agreement and taking physical possession of the vehicle. The court of appeals affirmed, similarly holding that because a conditional sale had occurred and possession and control of the vehicle had been transferred to the vendee, she was no longer indemnified as a permissive driver under the seller's liability policies. Because we hold that the conditional sale agreement did not vest the right of possession of the vehicle in the vendee, the judgment of the court of appeals is reversed and the case is remanded for further proceedings.

I.

The events giving rise to this action for declaratory judgment occurred in June 1998, when twenty-four-year-old Wendy Emken and her fiancé, Charles Sachtjen, and his three children were involved in a multi-vehicle accident while driving between Fort Morgan and Greeley. With the exception of one child, all occupants of the vehicle were killed. The vehicle being driven by Emken, a 1988 Ford Bronco II, was titled and registered to Joseph Martin and insured by him through American Family, under general motor vehicle liability and personal liability umbrella policies.

According to Martin's uncontested trial testimony and the findings of the trial court,

Martin and Emken became housemates in 1996 when Emken moved into her mother's house, where Martin had been renting a room since 1992. By late 1997, a parent-child-like relationship had developed between Martin and Emken, and he began allowing her to use several of his vehicles on an occasional basis to drive to and from work. Though such use initially required permission at each instance, Emken was eventually allowed to use the Bronco without asking, but only for purposes of going to and from work. About this time, Martin added Emken to his motor vehicle liability policy as an additional driver.

In November 1997, with the insurance premium and annual registration fees coming due the following January, Martin decided to sell the vehicle. Emken expressed an interest in buying it, and an oral agreement was reached for the sale of the vehicle to Emken for a price of $3,000 plus Martin's cost of maintaining insurance coverage and registering the vehicle, to be paid over a period of time. Emken agreed to give Martin her federal and state income tax refunds when she received them and the remaining amount by August 1998.[1] The parties agreed that Martin would keep the certificate of title in his name and would keep a set of keys to the vehicle until Emken made full payment. Although Martin continued to allow Emken to use the vehicle, as he had prior to the agreement, he specified that Emken not put excessive mileage on the vehicle nor allow anyone else to drive it. Emken was also to keep the vehicle in good condition and either pay for any necessary repairs on the vehicle or reimburse Martin for doing so.

Shortly after the agreement was entered into, Emken moved from their shared house in Fort Morgan to Greeley and, after seeking and obtaining Martin's consent, took the vehicle with her. Prior to the August deadline for full payment and transfer of title, Emken was involved in the fatal accident.[2] Martin subsequently filed a claim with American

---

1. The original agreement was for payment by April 1998, but was changed to August 1998 when it became clear to both parties that Emken would not be able to meet that deadline due to personal financial problems.

2. Prior to her death, Emken had paid Martin a $105 down-payment and $450 following his payment in the same amount to American Family.

Family and received $5,000 for the loss of the vehicle. American Family sought declaratory relief from liability for Emken's alleged negligence on the grounds that her status had changed from that of permissive driver to non-covered owner upon entering into the sales contract and taking actual possession of the vehicle.

The district court agreed, holding that under Colorado's Uniform Commercial Code and the case law of this jurisdiction, ownership of a vehicle is transferred upon the formation of a conditional sales contract and physical delivery of the vehicle, even though the certificate of title remains with the seller. The court held that under the circumstances of this case, Emken became the owner of the vehicle upon physical delivery of the keys following the agreement, and therefore she was no longer covered by Martin's policy at the time of the accident. Sachtjen appealed, and the court of appeals affirmed, finding dispositive this court's opinion in *United Fire & Casualty Co. v. Perez*, 161 Colo. 31, 419 P.2d 663 (1966). The appellate court held that although Martin retained some minor aspects of control, a "fundamental change in the control" of the vehicle took place "when the driver became the primary driver," such that Emken was no longer covered by Martin's policies.

We granted Sachtjen's petition for a writ of certiorari to the court of appeals.[3]

## II.

■ Although ownership of a motor vehicle is defined by the General Assembly in different ways for different purposes, the holder of a certificate of title clearly has an interest in insuring against liability for damages resulting from use of the vehicle. *See* § 10–1–102(6), 3 C.R.S. (2001)(" '[I]nsurable interest' in property means every interest in property or any relation thereto, or liability in respect thereof, of such a nature that a

contemplated peril might directly damnify the insured."); § 42–3–126, 11 C.R.S. (2001)("The owner of a motor vehicle who has made a bona fide sale or transfer of such owner's title or interest and who has delivered possession of such vehicle *and the certificate of title thereto properly endorsed to the purchaser or transferee* shall not be liable for any damages thereafter resulting from negligent operation of such vehicle by another.")(emphasis added); *see, e.g., Mercado v. The Travelers Ins. Co.*, 59 Tenn.App. 741, 443 S.W.2d 819, 823 (1969)("The peril of being sued simply because the title was registered in [the seller's] name is sufficient explanation of the purchase of the insurance."); *see generally* R.A. Vinluan, Annotation, *Liability Insurance: Insurable Interest*, 1 A.L.R.3d 1193, §§ 1(c)–3 (2002)(concluding that nearly all jurisdictions deem legal title to motor vehicle sufficient for insurable interest); 7 Am.Jur.2d *Automobile Insurance* §§ 229–30 (1997).[4]

■ If, however, the driver is using the car by virtue of his right to possess and control it rather than merely by grant of permission from the policy holder, the driver is generally not considered to be a permissive driver within the meaning of liability coverage. *See Perez*, 161 Colo. at 35–36, 419 P.2d at 665–66 (and cases cited therein); *see also Worchester v. State Farm Mut. Auto. Ins. Co.*, 172 Colo. 352, 359, 473 P.2d 711, 715 (1970)(holding that party with "legal control" has the "full right of control to permit whomever [that party chooses] to drive the vehicle"); *Benton v. State Farm Mut. Auto. Ins. Co.*, 306 F.2d 179, 181 (6th Cir.1962); *Nationwide Mut. Ins. Co. v. Cole*, 203 Va. 337, 124 S.E.2d 203, 206 (1962); Debra E. Wax, Annotation, *What Constitutes Ownership of Automobile Within Meaning of Automobile Insurance Owner's Policy*, 36 A.L.R.4th 7, §§ 5, 6 (2001). The existence of a "right" to possession by the driver, separate and apart from the consent of the policy holder, is

---

**3.** Sachtjen petitioned on the following issue:

Whether ownership of an automobile can be transferred, as a matter of law, without transfer of the certificate of title, and without transfer of the complete right to control the use of the vehicle.

**4.** Under section 10–1–102(6), more than one party may have an "insurable interest" in property, and the fact that Martin had an insurable interest did not affect Emken's ability to insure against her personal liability. *Accord Goins v. Greenfield Jeep Eagle, Inc.*, 449 Mich. 1, 534 N.W.2d 467 (1995).

therefore critical to the applicability of an insurance policy providing liability coverage for permissive drivers.

■ Despite some suggestion to the contrary, see § 42–6–109(1), 11 C.R.S. (2001), the General Assembly has not prohibited the right of possession from vesting in a conditional vendee prior to transfer of the certificate of title. Although the Certificate of Title Act states that no purchaser shall acquire any "right, title, or interest" in a motor vehicle unless he first obtains the certificate of title, § 42–6–109(1), it is well-established that the provisions of the Act were designed to allow purchasers to readily and reliably ascertain the status of a seller's title without recourse to official state records, *Guy Martin Buick v. Colo. Springs Nat'l Bank,* 184 Colo. 166, 171–72, 519 P.2d 354, 357 (1974), and do not govern the respective rights of the parties to a sale. *Perez,* 161 Colo. at 36, 419 P.2d at 666; *see also People v. Ayala,* 770 P.2d 1265, 1268–69 (Colo.1989); *Colo. Auto & Truck Wreckers Ass'n v. Dep't of Rev.,* 618 P.2d 646, 654 (Colo.1980).

The General Assembly has also acknowledged that the right to possession of a motor vehicle need not remain with legal title by requiring the person with the immediate right of possession to provide insurance coverage under certain circumstances instead of the holder of legal title. Under the provisions of the Colorado Auto Accident Reparations Act, title 10, article 4, part 7, 3 C.R.S. (2001), liability coverage is compulsory for every owner who operates or knowingly permits another to operate his vehicle on a public highway. § 10–4–705. The owner for purposes of the compulsory coverage provision of the Act is defined as the person who holds legal title to the vehicle unless there is

an agreement for conditional sale, a lease with a right to purchase, or a mortgage that also vests an immediate right of possession in the vendee, lessee, or mortgagor, in which case the owner for purposes of insurance coverage is the conditional vendee, lessee, or mortgagor. § 10–4–703(8).[5] While the legislature has clearly not barred the holder of legal title from maintaining liability coverage, it has nevertheless compelled a conditional vendee with an immediate right of possession to provide the statutorily required coverage and subjected him to personal liability and criminal sanctions for failing to do so. § 42–4–1409(1), 11 C.R.S. (2001).

[4, 5] Section 10–4–703(8) also makes clear that a title holder is not divested of the duty to insure merely by a conditional sale, or by actual use by the vendee following a conditional sale, but only by entering into a conditional sale agreement that vests the "right" of immediate possession in the vendee. The parties are capable of entering into an agreement for a conditional sale that does not grant the vendee the immediate right of possession, and the holder of legal title clearly has the authority to permit another to drive his vehicle, even if that person is a conditional vendee. *See Worchester,* 172 Colo. 352, 473 P.2d 711 (seller lost right to permit whomever he chose to drive vehicle upon transfer of title). Whether or not the right of immediate possession vests in a conditional vendee ultimately depends upon the agreement of the parties.[6] *See Perez,* 161 Colo. at 35, 419 P.2d at 665; *Country Mut. Ins. Co. v. Murray,* 97 Ill.App.2d 61, 239 N.E.2d 498 (1968)(stating "ownership" transfers at such time as parties intend it to be transferred); *Knotts v. Safeco Ins. Co.,* 78 N.M. 395, 432 P.2d 106 (1967)("[T]itle to and

---

5. Section 10–4–703(8) states: " 'Owner' means a person who holds the legal title of the vehicle; or in the event a vehicle is the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee, or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor shall be deemed the owner for the purpose of this part 7."

6. Unlike the court of appeals, the trial court relied on section 4–2–401(2), 3 C.R.S. (2001), of the Uniform Commercial Code, to hold that title passed upon delivery of the keys. Whether or not the U.C.C. governs the sale of motor vehicles not used as inventory, see § 42–6–120(1); *Guy Martin Buick v. Colo. Springs Nat'l Bank,* 184 Colo. 166, 173 n. 12, 519 P.2d 354, 358 n. 12 (1974), and even if so, whether the general sale of goods provision is reconcilable with the definition of ownership in specific motor vehicle provisions, even section 4–2–401(2) is subject to the agreement of the parties.

ownership of an automobile passes when the parties intend them to pass."); *see generally* 36 A.L.R.4th 7, §§ 5–7 (collecting cases in which courts look to intent of the parties to determine ownership and right of possession).

Contracts for the conditional sale of motor vehicles often take the form of informal, verbal agreements, with the terms being largely matters of fact. If, however, the parties to a conditional sale of a motor vehicle expressly agree that the title holder will continue to maintain insurance coverage on the vehicle, it is reasonable to infer that they also intend to include as a term of the contract that their agreed upon use of the vehicle would be covered. An agreement assigning the obligation to maintain insurance to the legal title holder, while simultaneously shifting the immediate right of possession to the conditional vendee, would not only fail to accomplish that result but would amount to nothing less than an agreement to violate the compulsory coverage provisions of the Colorado Auto Accident Reparations Act.

██ Such an agreement should not be inferred merely from the vendee's consensual use of the vehicle. In the absence of an expressly contradictory intent, an agreement that of the two parties the legal title holder will have the duty to maintain insurance coverage on the vehicle is tantamount to, and must be understood as, an agreement that the right of possession will also remain with the title holder, despite giving his permission for the vendee to use the vehicle.

The General Assembly could not have made more clear the purpose of the Auto Accident Reparations Act to avoid inadequate compensation to victims of automobile accidents and ensure coverage for legal liability. *See* § 10–4–702, 3 C.R.S. (2001); *Allstate Ins. Co. v. Smith*, 902 P.2d 1386, 1387 (Colo.1995). Its purpose was not to create uncertainty about the legal obligation to insure or the validity and scope of coverage. § 10–4–702; *Smith*, 902 P.2d at 1387–88

("The legislative intent and policy behind the Act are to maximize, not minimize insurance coverage, and to ensure that persons injured in automobile accidents are fully compensated for their injuries.") (citations omitted). Attributing to the parties an intent to separate the right of possession from the duty to insure would only increase uncertainty and reduce the likelihood of coverage.

It is also clearly in the public interest to infer an intent to comply with the compulsory insurance statutes from verbal agreements to insure.[7] Reliance instead upon the degree of control actually exercised by the parties after formation of the contract, or the change in risk actually incurred by the insurer, as dispositive of the right to possession, or ownership, would defeat the legislative purpose behind compulsory coverage and simply encourage litigation. Whether a particular use of the vehicle falls within liability coverage depends primarily on the terms of the insurance contract. Whether the driver is in possession of the vehicle by right or by a grant of permission from the title holder, however, depends upon the agreement of the parties to the sale.

Although perhaps less express, our prior holdings are to the same effect. Particularly, in *Perez*, 161 Colo. at 34, 419 P.2d at 665, upon which both lower courts relied heavily, we found the conditional vendee to be the owner of the vehicle and refused to order contribution by the title holder's insurance company, where the vehicle was turned over to the vendee upon his agreement to secure his own insurance coverage. Our statement that "upon delivery of the automobile to the [conditional vendee] his right to the use of the car was by virtue of his ownership and unrestricted right to control it, and not by virtue of any grant of permission," *id.*, was not intended to signify that physical possession and actual use by a conditional vendee are always by virtue of ownership. In *Perez*, after delivery of the automobile the vendee operated the vehicle by right rather than permission because of the circumstances of

---

7. *See generally* 11 Samuel Williston, *A Treatise On the Law of Contracts* § 30:9, at 98, § 32:19 (Richard A. Lord ed., 4th ed.1990) (interpretations of oral contracts favoring the public interest are generally preferred); Restatement (Second) of Contracts § 207 (1981)("In choosing among the reasonable meanings of a promise or agreement or a term thereof, a meaning that serves the public interest is generally preferred.").

that case, notably the agreement that the vendee would provide for his own insurance coverage. *Id.; cf. Worchester*, 172 Colo. 352, 473 P.2d 711 (1970)(seller's insurance company not liable despite apparent agreement that seller would insure vehicle where seller shortly before the accident by transferring title lost the right to permit whomever he chose to drive the vehicle).

### III.

■ Although the agreement in this case was entirely oral, the actual words and actions of the parties were undisputed. Acting as the trier of fact, the trial court determined that there was an oral contract for the purchase of Martin's vehicle by Emken for $3,000 and reimbursement for Martin's continued expense of insuring the vehicle and, if necessary, maintaining it. The trial court also found a number of requests by Martin or conditions on Emken's use and treatment of the vehicle, none of which amounted to an agreement that the immediate right of possession would vest in her before payment of the full purchase price and transfer of the certificate of title.

On the contrary, rather than expressly disputing the inference that the parties intended the right to possession to remain with Martin along with the obligation to insure, virtually all of the other limitations placed on Emken's use of the vehicle merely lend support to Martin's testimony that he considered the car to be his own, to do with as he chose until it was paid for. Martin kept a set of keys for himself; imposed conditions concerning the maintenance and usage of the vehicle; and most importantly, made clear that although Emken would be permitted to drive the vehicle, she would not have the authority to permit others to do so. Emken's subsequent request for permission to take the vehicle from Fort Morgan to Greeley and drive it between the two cities was further evidence that she shared Martin's understanding about the right to possession and control.

### IV.

In the absence of an express agreement to the contrary, the agreement of the parties that Martin would continue to maintain insurance coverage until the purchase price was paid amounted to an agreement that he would retain the right of possession of the vehicle. At the time of the accident, Emken therefore drove the vehicle by grant of permission from Martin rather than by virtue of any right of possession or ownership. Because the court of appeals erroneously believed our prior holdings dictated otherwise, its judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.