**VALLEY BANK AND TRUST COMPANY, a Nebraska corporation, Plaintiff–Appellee,**

v.

**HOLYOKE COMMUNITY FEDERAL CREDIT UNION, Defendant–Appellant.**

No. 04CA0200.

Colorado Court of Appeals, Div. I.

Aug. 25, 2005.

Rothgerber Johnson & Lyons LLP, Brent R. Cohen, Stephen E. Csajaghy, Denver, Colorado, for Plaintiff–Appellee.

Alvin R. Wall, Holyoke, Colorado, for Defendant–Appellant.

MARQUEZ, J.

In this dispute over priority of security interests, defendant, Holyoke Community

Federal Credit Union (Credit Union), appeals a summary judgment in favor of plaintiff, Valley Bank and Trust Company (Bank). We reverse.

Beginning in April 2000, Bank was a floor plan lender providing financing to an automobile dealership in Holyoke to purchase vehicles manufactured by General Motors Corporation. In exchange for this financing, Bank obtained a security interest in the dealership's motor vehicle inventory and any proceeds from the inventory. Bank perfected this interest in May 2000 by filing a UCC–1 financing statement with the Colorado Secretary of State.

As pertinent here, Credit Union provided funding for three vehicles to customers of the dealership in February and March 2001. Credit Union filed security agreements to perfect its security interest in the vehicles in June 2001.

In 2001, Bank discovered that the dealership had been selling vehicles "out of trust" to consumers without remitting the proceeds to Bank for the amount loaned. Accordingly, Bank never received the proceeds for the three disputed vehicles sold by the dealership.

Bank retained possession of the certificates of origin until Credit Union signed a stipulation for release of the titles to the customers to enable them to register the vehicles with the state. Bank then sent a demand letter to Credit Union for the return of the certificates of origin, stating that its only intention in delivering them to Credit Union was to facilitate registration by the parties who had paid for the vehicles and had obtained financing through Credit Union. Credit Union refused to return the certificates, stating that it had received them for value.

Bank filed a complaint against Credit Union alleging conversion of the vehicle titles and proceeds and seeking a declaratory judgment and recovery of proceeds received by Credit Union. Bank filed a motion for summary judgment on its claims for conversion and declaratory judgment. Credit Union filed a response and a cross-motion for sum-

mary judgment. The trial court then granted summary judgment in favor of Bank.

In its ruling, the court stated that neither the purchasers of the vehicles nor Credit Union could acquire an interest until the titles were delivered to either of them and it follows that neither could qualify as "buyers in the ordinary course of business." Additionally, the trial court found no evidence that Bank misled Credit Union in any way or that the amount claimed by Bank is somehow incorrect. The court entered judgment in favor of Bank for $47,658.89, including $46,975 for the vehicles and $683.89 for Bank's costs. Credit Union appeals.

## I. Standard of Review

■ We review de novo an order granting summary judgment. *Vail/Arrowhead, Inc. v. Dist. Court,* 954 P.2d 608 (Colo.1998).

■ Summary judgment is a drastic remedy and is only appropriate where there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *Compass Ins. Co. v. City of Littleton,* 984 P.2d 606 (Colo.1999).

■ In analyzing a summary judgment motion, we view all facts in the light most favorable to the nonmoving party. *Redmond v. Chains, Inc.,* 996 P.2d 759 (Colo.App.2000). Thus, we give the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the evidence, and we resolve all doubts as to the existence of a material fact against the moving party. *Schold v. Sawyer,* 944 P.2d 683 (Colo.App. 1997).

## II. Security Interest

■ Credit Union contends that although Bank had a perfected security interest in the dealership's inventory, the interest terminated because Bank authorized disposition of the inventory, leaving it with a security interest in the proceeds only. We agree.

Under Colo. Sess. Laws 1977, ch. 62, § 4–9–306(2) at 324 (now codified with amendments as § 4–9–315(a)(1)–(2), C.R.S.2004), a "security interest continues in collateral notwithstanding sale, exchange, or other disposi-

tion thereof *unless* the disposition was *authorized* by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor" (emphasis added).

Here, the floor plan line of credit agreement between the dealership and Bank provides in relevant part:

> Borrower agrees that when any financed inventory items [are] *sold or otherwise disposed of,* Borrower shall account to Bank for the proceeds and shall deliver to Bank such proceeds and such assignments or endorsements as may be requested by Bank. Bank shall be entitled to the *proceeds* and have a security interest in them.

(Emphasis added.)

Bank nevertheless contends that the Colorado Certificate of Title Act (Title Act), § 42–6–101, et seq., C.R.S.2004, requires that third-party lenders, such as Credit Union, obtain the title to a vehicle in order to obtain a security interest in the vehicle. We disagree.

Here, both Bank and the trial court relied on the decision in *Guy Martin Buick, Inc. v. Colorado Springs National Bank,* 184 Colo. 166, 519 P.2d 354 (1974). That case involved the purchase of three automobiles from a dealer, who had a financing agreement with a bank. The selling dealer delivered the titles to the bank, but the purchasing dealer's check was dishonored for insufficient funds. The seller dealer immediately took possession of the automobiles. Thus, the case centered on a determination of whether the selling dealer or the bank had a superior interest in the three automobiles.

In *Guy Martin,* the supreme court held that the purpose of the Title Act is to insure that purchasers of automobiles, whether individual citizens or dealers, as well as lenders who finance automobile purchases, can readily and reliably ascertain the status of the seller's title to the automobile without recourse to other official state records. Citing an earlier version of § 42–6–109(1), C.R.S. 2004, the supreme court held that until the certificates of title were delivered, the purchasing dealer acquired no right, title, or

interest in the automobiles which he could convey to a third party. *Guy Martin Buick, Inc. v. Colo. Springs Nat'l Bank, supra,* 184 Colo. at 172, 519 P.2d at 357. The court nevertheless held that under the facts of the case, the bank's security interest attached to the automobiles at the same instant that the titles were delivered to the bank.

First, we note that unlike here, *Guy Martin* involved a sale between dealerships and also did not address the effect of a secured party's authorized sale or interest in proceeds. Moreover, a number of cases in Colorado in other contexts have held that the failure to deliver a certificate of title does not prevent the acquisition of ownership rights as between the parties to the transaction. *See People v. Ayala,* 770 P.2d 1265 (Colo. 1989); *Colo. Auto & Truck Wreckers Ass'n v. Dep't of Revenue,* 618 P.2d 646 (Colo.1980); *Hall v. Hong Seung Gee,* 725 P.2d 1164 (Colo.App.1986); *Waggoner v. Wilson,* 31 Colo.App. 518, 507 P.2d 482 (1972); *see also Sachtjen v. Am. Family Mut. Ins. Co.,* 49 P.3d 1146 (Colo.2002).

Bank also relies on the provisions of §§ 42–6–109(1) and 42–6–120, C.R.S.2004, to support its position that its lien is superior to any lien or interest held by Credit Union.

Section 42–6–109(1), the current version of the statute addressed in *Guy Martin,* provides:

> Except as provided in section 42–6–113, no person shall sell or otherwise transfer a motor vehicle to a purchaser or transferee without delivering to such purchaser or transferee a certificate of title to such vehicle . . . and no purchaser or transferee shall acquire any right, title, or interest in and to a motor vehicle purchased by such purchaser or transferee unless and until he or she obtains from the transferor the certificate of title thereto, duly transferred to him or to her in accordance with the provisions of this part 1.

Section 42–6–113, C.R.S.2004, provides in part:

> Upon sale or transfer by a dealer of a new motor vehicle, such dealer shall, upon the delivery thereof, make, execute, and deliver to the purchaser or transferee a good

and sufficient bill of sale therefor, together with the manufacturer's certificate of origin.

Under § 42–6–120(1), C.R.S.2004, "the provisions of the [Uniform Commercial Code (UCC) ] relating to the filing, recording, releasing, renewal, and extension of chattel mortgages ... shall not be applicable to motor vehicles." However, § 42–6–120(2), C.R.S.2004, states that the provisions of §§ 42–6–120 and 42–6–121, C.R.S.2004, "*shall not apply* to any mortgage or security interest upon any vehicle or motor vehicle held for sale or lease *which constitutes inventory,*" but "the provisions of [UCC] article 9 of title 4, C.R.S., shall apply, and perfection of such mortgages or security interests shall be made pursuant thereto, and the rights of the parties shall be governed and determined thereby" (emphasis added). *See also Guy Martin Buick, Inc. v. Colo. Springs Nat'l Bank, supra,* 184 Colo. at 173 n. 2, 519 P.2d at 358. Thus, the UCC applies to Bank's security interest in the dealership's inventory.

The security agreement between Bank and the dealership was intended to create a security interest in the financed inventory to secure repayment of Bank's financing loan. Accordingly, upon the authorized sale of a vehicle from inventory, Bank's security interest in the inventory as collateral was extinguished, leaving it with a security interest only in the proceeds.

While Bank perfected its security interest in the inventory in May 2000, and Credit Union made the loans to the three customers in February and March 2001, neither Credit Union nor the purchasers were able to obtain titles to the vehicles because the dealership failed to make the required remittances of the proceeds to Bank on the sold vehicles, and Bank refused to surrender the certificates of origin. Credit Union received the titles only when Bank surrendered the certificates of origin for the benefit of Credit Union's customers to register the vehicles under the stipulation. Because Bank authorized the disposition of the collateral without informing the buyers that it was reserving a right to the collateral if the dealership did not make the required payments, it lost its security interest in that collateral. *See Colo. State Bank v. Hoffner,* 701 P.2d 151, 153 (Colo.App.1985). Accordingly, Credit Union's interest in the vehicles prevails.

■ Further, as Credit Union contends, it is a buyer in the ordinary course of business from the dealership so as to take free of Bank's security interest in the dealership's inventory. Under Colo. Sess. Laws 1987, ch. 42, § 4–9–307(1)(a) at 354 (now codified with amendments as § 4–9–320(a), C.R.S.2004), "[a] buyer in ordinary course of business, other than a person buying farm products from a person engaged in farming operations, takes free of a security interest created by his seller even though the security interest is perfected and the buyer knows of its existence." A "buyer in ordinary course of business" is defined as

> a person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and buys in the ordinary course from a person ... in the business of selling goods of that kind. A person buys goods in the ordinary course if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices.

Section 4–1–201(9), C.R.S.2004.

Credit Union received an enforceable right to its security interest in the vehicles as a purchaser for value. As pertinent to Credit Union, the definition of "purchase" and "purchaser" as set forth in the UCC are sufficiently broad to encompass a lender who takes a security interest in goods as security for its loan. *Guy Martin Buick, Inc. v. Colo. Springs Nat'l Bank, supra,* 184 Colo. at 174, 519 P.2d at 358.

Here, the facts set forth by the parties establish that these conditions have been met by Credit Union's customers and that under § 4–9–320, Credit Union takes free of any security interest Bank may have retained in the automobiles.

Our resolution is consistent with decisions in other jurisdictions. In *North Carolina National Bank v. Robinson,* 78 N.C.App. 1, 336 S.E.2d 666, 670 (1985), the court held

that notwithstanding the title transfer provisions of the state's Motor Vehicle Act, an automobile purchaser may be a buyer in the ordinary course of business even though the certificate of title has not yet been reassigned.

Similarly, in *Cunningham v. Camelot Motors, Inc.*, 138 N.J.Super. 489, 351 A.2d 402 (Ch.1975), the court determined that a purchaser was a buyer in ordinary course even though the lender still held the manufacturer's statement of origin. In *Cunningham*, the court stated that the purpose of § 9–307(1) of the uniform code (comparable to § 4–9–320) is to protect bona fide purchasers for value who acquire goods in the ordinary course of business from a merchant's inventory. Thus, the court determined that under § 9–307(1) purchasers take free of the floor plan lender's security interest in the automobiles. *Cunningham v. Camelot Motors, Inc., supra,* 351 A.2d at 403.

In *Stroman v. Orlando Bank & Trust Co.*, 239 So.2d 621, 623 (Fl.Dist.Ct.App.1970), the court considered a statute providing that no person acquiring a motor vehicle from the owner thereof, whether the owner is a dealer or otherwise, shall acquire a marketable title until he shall have issued to him a certificate of title and that no court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold, disposed of, mortgaged, or encumbered unless evidenced by a certificate of title duly issued. The court held that the statute does not prevent passage of a valid title to a purchaser from a dealer where the purchaser has received possession of the vehicle and in good faith relies on the dealer to perform his statutory duty to secure a proper title certificate in the purchaser's name. *See also Correria v. Orlando Bank & Trust Co.*, 235 So.2d 20, 24 (Fla.Dist.Ct.App.1970)(stating that the failure of the buyer to obtain the title certificate at the time of the sale does not prevent the passage of title from the seller to the buyer and holding that lending bank's interest was cut off when dealer sold car to buyer in the ordinary course of business, even though

bank still held certificate of title); *Rome Bank & Trust Co. v. Bradshaw*, 143 Ga.App. 152, 237 S.E.2d 612, 614 (1977)(holding that floor-planned vehicles held in inventory for sale by a dealer are not controlled by the Georgia Motor Vehicle Certificate of Title Act); *Hampton Bank v. River City Yachts, Inc.*, 528 N.W.2d 880, 890 (Minn.Ct.App.1995)(holding that purchaser of watercraft from a dealer may qualify as a buyer in ordinary course of business and take free of a prior security interest, even if the purchaser has not obtained a certificate of title or the manufacturer's statement of origin for the watercraft).

Based on our disposition, we do not address Credit Union's additional arguments that the trial court erred in (1) assuming that Bank was entitled to keep possession of the titles until it received the proceeds from the dealership and was not obligated to forward the titles to the customers for registration; (2) finding that Bank was entitled to judgment under a theory of conversion; (3) awarding damages in the amount of the value of the motor vehicles' purchase prices rather than their value at the time of Bank's demand; and (4) denying Credit Union's claim of equitable estoppel.

Accordingly, the judgment is reversed.

Judge HAWTHORNE and Judge HUME * concur.